## GREENE COUNTY COURT.

### THE PEOPLE agt. JOHN W. ALBERTSON.

The provisions of the Revised Statutes, that vacancies in all town offices, except those therein enumerated, shall be supplied by the appointment of the justices of the town, is abrogated, by the Constitution of 1846, (*art.* 6, § 17,) as respects the appointment of a *justice of the peace* to fill a vacancy. That section of the constitution directs the *election* of justices of the peace by the electors of the several towns, at their annual town meetings for the full term, and also, *to fill vacancies.*

*Quere ?* Whether any other mode for filling a vacancy in the office of justice of the peace is provided ? If any, it must be by the statute passed in 1849, ch. 28, which directs the Governor to fill all vacancies which shall occur in any of the offices of the State, " where no provision is now made by law for filling the same."

Therefore, perjury can not be assigned of testimony given before a justice of the peace *appointed* to fill a vacancy, *by three justices* of the town, under the Revised Statutes. The appointment confers no *color of title,* because it is *void.*

*October Term,* 1853. This was an indictment for perjury, tried at the October sessions in this county. The alleged perjury was charged to have been committed by the defendant in an examination taken by John Olney, Esq., a Justice of the Peace of the town of Windham, in 1852. On the trial the justice was sworn as a witness on the part of the people, and testified that he took the examination referred to, and that he was, at the time, an acting justice of the peace of the town of Windham. He stated also the testimony given on that examination by the defendant. The defendant's counsel, on the cross-examination, sought to show by the witness, that he was, at the time, acting as justice under an appointment made by three Justices. To this the District Attorney objected, but the objection was overruled. It was then admitted that Mr. Olney was not elected, but had been appointed, as before mentioned, shortly after the annual town meeting in 1852, to fill the vacancy occasioned by the removal of Esquire Rowley from the town, which removal was also after said town meeting.

Defendant's counsel here moved that the evidence of Mr.

Olney be stricken out, on the ground that when he took the examination in question, he was no officer, that he was not acting under color of title, the three justices having no power to appoint at all, and consequently that perjury cannot be assigned of testimony given before him.

These questions were argued at great length and with much ability by the counsel for the defendant.

G. W. CUMMINGS, R. H. KING, & MR. WARNER, *for Def't.*
D. K. OLNEY, *District Attorney, for the People.*

BAILEY, County Judge.—The official acts of an officer *de facto* are good, so far as the public and third persons are concerned. This is settled law, determined by an uninterrupted line of decisions.

But an officer *de facto*, is one who acts under color of title, which color can only be given by power having authority to fill the office. In the case of elective officers, the electors of the proper district confer the title, or color of title; and in the case of officers who must be appointed, it is the appointing power who does this.

An elective officer who acts under color of an election, is a good officer, so far as the public and third persons are concerned, until he is ousted by proceedings upon a *quo warranto.* Whether there was error or fraud in that election, whether the result was properly or improperly declared, and generally, whether the election is valid or not, are questions which cannot be raised in a collateral proceeding or cause. It is sufficient that the office is elective, that the voters of the district he represents have authority to fill it, and that this has been done, or purports to have been done, and to have resulted in his election, as appears by the *prima facie* evidence of such a fact.

The *correctness* of the result in such a case, can only be questioned by *quo warranto*, as before remarked. But when by law the office is not elective, as in the case of a notary public, and the like, no election, however correct in form, would give the man elected a title to the office, or even *color* of title, for

the plain reason that the electors had no power to fill the office.

And so in regard to an office, which by law must be filled by appointment. If the proper appointing power have acted in his case, and given him an appointment, no matter how defective in form, he is, *de facto,* an officer acting under color of title, and his acts are good, so far as the public and third persons are concerned. If, in fact, his appointment is voidable by reason of fraud or defects, or from any cause, other than the want of authority in the appointing power, it can only be taken advantage of in proceedings upon a *quo warranto,* and can in no case be raised in a collateral action or proceeding.

But when the appointment is made by persons having no authority to appoint at all, the appointment is not voidable merely, but absolutely void. It gives no color of title. And this, in all cases, may be attacked collaterally; at all events, this defendant, on trial upon an indictment charging him with perjury, committed in an examination before a magistrate, may show, if he can, that the magistrate at the time, was not acting under color of title—in other words, that the three justices who appointed him, had no authority to fill the office at all.

Perjury can only be assigned of testimony given before a competent tribunal or officer. And within the limits stated, the defendant always has a right to show that the alleged tribunal or officer was, in fact, no tribunal or officer.

John Olney was appointed a justice of the peace in and for the town of Windham, in this county, after the annual town meeting in said town, in the year 1852, to fill a vacancy occasioned by the removal of a justice from said town, after said town meeting. The appointment was made by three justices of the peace of said town. If these justices had power to fill that vacancy Mr. Olney was a good officer, and competent to take the examination in question. If they had not such power, they could give no color of title to him, his appointment was void, and he consequently had no right to administer the oath and take the examination in question.

The constitution of 1846 abrogates all laws repugnant to itself. Is the provision of the Revised Statutes, under which this appointment was made, inconsistent with the new constitution, or has the constitution provided for filling vacancies in the office of justice of the peace? Art. 6, Sec. 17, directs the election of justices of the peace by the electors of the several towns, at their annual town meetings, for the full term, and also to fill vacancies. But a vacancy may occur, as in the case under consideration, just after a town election—and how is this to be filled until the next election?

It may be doubted, perhaps, whether it can be filled at all. The constitution having provided the way to fill vacancies in the office generally, it is very questionable whether the Legislature can provide another way for a specific case. True, a subsequent section declares that the Legislature may provide for filling vacancies in office, but must this not mean in cases where the constitution itself does not prescribe the mode? The vacancy *can* be filled in the mode prescribed in the constitution, although not immediately.

Art. 10, Sec. 5, declares, " That the Legislature shall provide for filling vacancies in office." If, then, Sec. 17 of Art. 6 does not furnish the only way to fill the vacancy in question, the authority to do it must be derived from this section 5. In pursuance of this section, the Legislature have passed an act, (*chap.* 28, *of Laws of* 1849,) directing the Governor to fill all vacancies which shall occur in any of the offices of the State, " where no provision is now made by law for filling the same."

Unless the direction of the Revised Statutes, that vacancies in all town offices, except those therein enumerated, shall be supplied by the appointment of the justices of the town, is still in force in respect to vacancies in the office of justice of the peace, then there is no other statute than that of 1849, by which the vacancy in question could be filled. We think that statute abrogated by the constitution. It is "repugnant" to that instrument. It provides for a different kind of vacancy from the one in question, and therefore does not provide for this. It authorizes a class of judicial officers to create one of

their own number, with the same powers and concurrent juris-diction with themselves.   Such a power is anomalous, without precedent, and contrary to sound principle and policy.   It is opposed to the whole spirit and object of the constitution.

If, then, the constitution does not itself provide, in Sec. 17 of Art. 6, the way in which this vacancy should have been filled, (which we rathei think it does,) the statute of 1849 fur-nishes the only authority for supplying it, if any authority ex-ists at all.   But whether this be so or not, we are of opinion that the justices cannot appoint.   We, thererefore grant the motion.

The prosecution, resting upon the evidence of Mr. Olney, failed of necessity, and the jury, under the direction of the court, rendered a formal verdict of not guilty.