# THE STATE OF MINNESOTA

## *vs.*

## THOMAS H. STOKELY.

The defendant was indicted for murder committed in the county of St. Louis, an organized county, to which the unorganized counties of Lake, Carlton, and Itasca, are attached for judicial purposes, by an indictment entitled in the counties of St. Louis, Lake, Carlton and Itasca, and found by a grand jury selected from said counties. *Held*, that said indictment was properly entitled and found.

The defendant moved on affidavit under *Gen. Stat. ch.* 113, for a change of venue, in opposition to which the prosecution was allowed, against defendant's objection, to read counter affidavits. *Held*, that inasmuch as the granting such change of venue is a matter resting in the sound discretion of the district court, counter affidavits are properly receivable upon the question. Also, that the decision of the district court is not reviewable here, unless an abuse of such discretion is shown.

A special venire issued under *Gen. Stat. ch.* 64, *sec.* 17, need not specify the names of the persons to be summoned.

The fact that one of the jury summoned was a clergyman who had preached the funeral sermon of the deceased, was not, of itself, sufficient to disqualify him from serving as a juror on the trial. Such fact had not of itself any tendency to prove a mental bias against the defendant.

A motion for a new trial based on the affidavit of a juror, that he would not have concurred in the verdict had not his health absolutely required him to be released from his confinement as a juror, and that the verdict was contrary to his view of the case, was properly denied. Such affidavit is within the rule which excludes the affidavits of jurors to impeach their verdict.

A physician called by the state, who attended the deceased after he had been stabbed, and who had testified as to his condition, the character of the wound, and the cause of death, was asked on cross-exam-

ination, "Suppose a person received a wound and went about in the rain and cold, would not such imprudence increase the hemorrhage and inflammation?" *Held*, that such question was rightly excluded, no such facts being in proof, and if they were, an affimative answer would have had no tendency to show that the stabbing was not in itself an act eminently dangerous to human life.

An instruction that the jury were at liberty to find a verdict against defendant of murder in the second degree, and that there was evidence in the case that they might consider in that respect, is not an expression of opinion that the evidence warranted such a verdict, but that there was evidence proper for their consideration, upon which they might find such a verdict, if satisfied thereby of the defendant's guilt

To warrant a conviction for murder in the second degree, it is not necessary for the prosecution to prove affirmatively, not only that the killing was unlawful and perpetrated by an act eminently dangerous to one or more persons, evincing a depraved mind, regardless of the life of such person, but also, without any design to effect death.

The deceased was designedly stabbed in the belly by an underhanded blow with a knife. *Held*, that this would justify in this case a verdict of murder in the second degree, unless done in self-defense, or heat of passion on sudden provocation, or in sudden combat; and that the prosecution was not bound to prove affirmatively, that no such circumstances of justification or extenuation existed.

The jury returned a verdict of guilty. There was evidence which tended to identify the defendant as the person who struck the fatal blow. *Held*, that it would be usurping the province of the jury to say that the evidence was manifestly insufficient to satisfy them, beyond a reasonable doubt, that the defendant was the man.

The defendant, Thomas Courtney, Edward McGovern, Edward J. Pauline and Benjamin F. Zaracher, were indicted together for murder, committed in the organized county of Saint Louis, to which the unorganized counties of Lake, Carlton and Itasca are attached for judicial purposes. The indictment was entitled in the counties of St. Louis, Lake, Carlton and Itasca, and the grand jury who found it were selected from such counties. The defendants moved to set

aside and quash the indictment, upon the ground that the offense was committed in St. Louis county, and the indictment was found by a grand jury of the counties of Saint Louis, Lake, Carlton and Itasca. They also demurred upon the same ground. The court overruled the demurrer, and denied the motion, and the defendants excepted. The defendants then moved for a change of venue upon affidavits. The prosecution offered certain affidavits in opposition to the motion, which were objected to on the part of the defendants. The objection was overruled, and the defendants excepted, and the affidavits were read. The court denied the motion, and the defendants excepted

The defendant Thomas H. Stokely being put upon trial, interposed a challenge to the panel of petit jurors, and they were discharged. The court ordered a special venire to issue for twenty-four petit jurors, who were summoned, and all discharged upon challenge. The court ordered a second special venire to issue, commanding the sheriff of St. Louis county to summon seventy-two persons from said county competent to serve as petit jurors; this venire being returned with the names of the persons summoned, the defendant objected to any of such persons being sworn as jurors, on the ground that their names were not mentioned or specified in the venire. The court overruled the objection, and the defendant excepted, and thereupon a jury was impanneled. Several exceptions were taken by the defendant to the rulings of the court on the admissibility of evidence during the trial, which exceptions and rulings appear in the opinion of the court.

After the evidence was closed, the court, among other things, instructed the jury " That the jury were at liberty to find a verdict against the defendant of murder in the second degree, and that there was evidence in the case that

they might consider in that respect;" to which defendant excepted.

The jury returned a verdict of guilty of murder in the second degree. The defendant moved the court for a new trial upon the following grounds:

"1. Because of error in law occurring at the trial and excepted to on the part of the defendant.

"2. Because the verdict is not justified by the evidence.

"3. Because the verdict is contrary to law.

"4. Because the venue should have been changed on behalf of the defendant.

"5. Because the juror Henry Elliott was not an impartial or suitable juror.

"6. Because the said juror had preached the funeral sermon at the obsequies of George Northup, the deceased, and did not declare the fact of his having read said sermon to the court or the triers, and his counsel and the defendant were ignorant at the time said juror was challenged and examined of the said fact of his having preached said sermon, and would have challenged the said juror peremptorily if they had known the facts aforesaid.

"7. Because the juror O. Durocher was sick and physically incapacitated by reason of sickness from rendering a decision according to the dictates of his conscience.

"8. Because the juror O. Durocher was sick and by reason of his sickness was unable under his long confinement during the trial and in the jury room to endure the fatigue incident to his duties as a juryman, and his verdict was influenced by his physical debility."

In regard to the juror Henry Elliott, it was admitted that he was a clergyman and preached the funeral sermon of the deceased, "that he was examined upon his *voire dire* and testified that he had not formed or expressed an opinion

upon the case, or as to the guilt or innocence of the defendant, and that he was without bias or prejudice for or against defendant, and was wholly impartial."

The objection to the juror O Durocher was supported by his affidavit in the following words:

"Onisimus Durocher, being duly sworn, says that he was one of the jury in the above entitled action, that before deponent was sworn as a juror, and just before he was sworn, deponent stated to the judge of said court, that his health was such that he could not sit as a juror in said action; that he could not stand confinement. Deponent further says that such was the fact and that deponent's health had long been seriously impaired. Deponent further says that he would not render a verdict in said action as he did render the same, had not his health absolutely required him to be released from his confinement as a juror in said action, and that said verdict was contrary to his views of the case. Deponent further says that the said jury were not allowed to separate by the court, and were kept together in close confinement for three days and nights, to the great injury of deponent's health."

It also appeared by affidavit when the motion for a new trial was heard, that within a few days after the conviction of the defendant, at the same term of the court, the case of Benjamin F. Zaracher, under the same indictment, was called, and after the examination of a number of jurymen as to their qualifications, the court announced that it seemed impossible to obtain a jury; that if the defendant Zaracher would renew the motion for a change of venue, the court would grant it; that the motion was renewed and granted upon the same affidavits.

The motion for a new trial was denied, and the defendant appeals to this court.

The State of Minnesota v. Stokely

H. J. HORN and I. V. D. HEARD for Appellant.

F. R. E. CORNELL, Attorney General.

*By the Court*—RIPLEY, CH. J.—The defendant contends that *ch.* 112 *of the Laws of* 1867, (*p.* 156) only applies to the unorganized counties attached to an organized county for judicial purposes, and that St. Louis, the county in which the offense was committed, being an organized county, the indictment should have been found by a jury of that county.

It cannot be denied that the wording of the preamble, and of portions of the act, countenance the position. It is evident, however, from the whole of sections one and two, when read together, that the expression "such counties," in the third line of section one, and twelfth line of section two, is meant to include, not only the counties attached to another for judicial purposes, but the county to which they are attached; if so, this indictment is properly entitled and found.

The construction put upon the act by defendant, moreover, would require one grand jury for St. Louis county, and another for the counties attached to it, and not only so, but that separate panels of petit jurors should be drawn and attend the court, one for St. Louis, and another for the counties attached to it. It is evident from the whole act that the legislature intended no such innovation.

The question, however, which the defendant raises, is really not an open one. Though not raised by counsel, the court, nevertheless, in the *State vs. Gut,* 13 *Minn.* 343, in considering this act, construe it in the sense opposed to defendant's theory, since it is there held, (*p.* 348) that under it, jurors for the trial of crimes committed in Brown,

are chosen, as before its passage they were chosen, from said county and the counties attached to it for judicial purposes. The offense in that case was committed in Brown county, and the indictment was entitled as in this case, and found by a grand jury similarly selected, viz: from Brown and the counties so attached, and under the law, the same rule as to the counties from which they are to be selected, applies to grand and petit jurors.

The next objection is that the court erred in allowing counter affidavits on the motion to change the venue. To authorize such change it is well settled, on general principles, that facts must be shown sufficient to satisfy the court that it is necessary in order to procure an impartial trial, and by our statute, they are to be shown on affidavit; and though *sec.* 1, *of ch.* 113, *of General Statutes,* impliedly, though not in terms, refers to a change made at the request of the defendant, it contains nothing to restrict the court to affidavits presented by him, in its consideration of the question.

If, indeed, the district court has no discretion in the matter, but a change is to be granted whenever the defendant's affidavits state facts and circumstances sufficient to establish a *prima facie* case, its action in this case might perhaps have been properly enough assigned for error; counter affidavits being, on this theory, necessarily inadmissible, and the defendant's affidavits being sufficient to make out such *prima facie* case, according to the construction put upon similar language in the statute authorizing service of a summons by publication, where it appeared, by affidavit, to the satisfaction of the court, that the defendant could not by due diligence be found in the state. *Mackubin v. Edgerton,* 5 *Minn.* 367.

The act before us, however, is but an affirmance of the

The State of Minnesota v. Stokelp.

common law right of the defendant to an impartial jury of the county where the offense was committed, subject to the right of the court to change the place of trial when such impartial jury could not be had there. *State vs. Miller,* 15 *Minn.* 370. Such right of the court is as much to be exercised, in its sound discretion, under this statute, as it was at common law, (*Maton vs. People,* 15 *Ill.* 536 , *Mark vs. State,* 32 *Miss.* 426,) and its common law power to hear evidence in opposition to, as well as in favor of the change, remains, in the absence of any statutory inhibition, wholly unimpaired. Counter affidavits are receivable at common law, and such has been the practice under this statute.

It has always been held that the inability to obtain a fair and impartial jury should be clearly established, and a *prima facie* case of undue feeling and excitement has been held insufficient, as easily established in most cases of crime, especially of a flagrant character, and the opposing affidavits are relied on to rectify any partial or limited views, thus presented, of the state of the public mind. *People vs. Bodine,* 7 *Hill,* 147–149.

This application for a change of venue being addressed to the sound discretion of the district court, its decision is not reviewable in this court, in the absence of any abuse of such discretion.

The fact is relied on, that the jurors summoned by virtue of the original venire being discharged on a challenge to the panel, a special venire for twenty-four was returned, all of whom were discharged on challenges, and thereupon a special venire of seventy-two was had, from whom a jury was obtained, and that after defendant was convicted, the case of Zaracher, under the same indictment was called, and after an attempt made to impannel a jury by calling several jurors, and examining their qualifications, the judge

announced, that as it seemed impossible to obtain a jury, if the defendant would renew the motion made by Stokely for a change of venue, it would be granted; which motion was thereupon made upon the affidavits filed in Stokely's case, and was immediately granted.

The case does not show upon whose challenges the first special venire was exhausted, nor that a jury was not obtained from the second without any challenge interposed by the defendant or state. Nor does the fact, that after the impression made by Stokely's trial, so many of the jurors summoned should have appeared not to be qualified to decide impartially in Zaracher's case, as to have led the judge to the conclusion, that an impartial jury could not be obtained, have any tendency to show that such a jury could not be, and was not obtained, in Stokely's case.

Though the motion in Zaracher's case was made on the affidavits filed in Stokely's case, it is evident that it was not granted on the showing made by them, but upon the judge's own experience above mentioned.

Upon the affidavits and counter affidavits used in Stokely's case, no ground is perceived upon which an allegation of abuse of discretion could be successfully founded, nor does the defendant make any.

The special venire from which the jury was selected, specified the number, but not the names of the persons to be summoned, and said jurymen were consequently selected by the sheriff, and not by the court. The defendant objected to said venire, and each of the persons so summoned, on the ground that said venire should have specified the names of the persons to be summoned, and that the selection by the sheriff was unauthorized by law. The objection was overruled, and defendant excepted.

The objection was properly overruled. By law, the

court, in a case like the present, is to order a special venire to issue to the sheriff, commanding him to summon from the county at large a number therein named, of competent persons, to serve as jurors.  *Gen. Stat. ch.* 64, *sec.* 17.

By the express words of the act, the number, not the names, is to be specified, and necessarily so, it would seem, if they are to be summoned from the county at large.

As to the general venire for persons regularly drawn from a list made up by the county commissioners, different language is used.  In that case the venire must command the sheriff to summon the "persons so drawn."  ( *Gen. Stat. ch.* 107, *sec.* 8, *ch.* 71, *sec.* 4.)  And in view of the fact that talesmen are selected by the sheriff, his deputy, or any disinterested person appointed by the court, ( *Gen. Stat. ch.* 71, *secs.* 12, 13, 14,) it is difficult to conceive of any good reason why any other than its natural construction should be put upon the provision for a special venire, nor why the number named should not be selected by the sheriff.

That one of the jurors was a clergyman who had preached the funeral sermon of the deceased was insufficient to disqualify him as a juror.  Searching questions were put by defendant's counsel as to his state of mind in reference to the case, and the guilt or innocence of the defendant, and he emphatically declared himself entirely impartial in the case.  The presumption is that he told the truth.  That he officiated at the funeral in his capacity as a clergyman had, of itself, no more tendency to prove a mental bias against defendant, than a performance by the undertaker of the duties of *his* calling on the same occasion would tend to prove such a bias on *his* part.

The motion for a new trial based on the affidavit of a juror, that he would not have concurred in the verdict had not his health absolutely required him to be released from

his confinement as a juror, and that it was contrary to his views of the case was properly denied. The affidavit comes within no known exception to the rule excluding the affidavits of jurors to impeach their own verdict. *Knowlton vs. McMahon*, 13 *Minn.* 380.

There was no error in excluding the question put by defendant, in cross-examination to Dr. Potts, viz: " suppose a person received a wound, and went about in the rain and cold, would not such imprudence increase the hemorrhage and inflammation ?"

It is improper on cross-examination, to assume facts to have been proved which have not been; especially when it is for the purpose of getting the opinion of an expert on a mere hypothesis, not to test his skill, or accuracy, but to obtain evidence in support of the defense. Assuming, however, that the facts which the hypothesis supposes to exist had been proved, the defendant contends that if the stabbing became dangerous from subsequent exposure, it would not have been, *when committed*, an act eminently dangerous to life, &c.

An affirmative answer to the question would not, however, have had any tendency to show that the stabbing was not in itself, such an act, but only that the fatal consequences were hastened, and perhaps aggravated, by the exposure. This would be incompetent. The witness had testified that the deceased died from internal hemorrhage caused by the wound. Though the hemorrhage was increased by the exposure, it is not the exposure, but the wound, that causes the death.

The evidence offered to prove that the deceased, on the evening of his death, identified McGovern, as the person who struck the fatal blow, was properly excluded. To admit it, would be to make a new exception to the rule which excludes hearsay evidence.

The State of Minnesota v. Stokely.

A witness was asked: "How was the size and general appearance of Stokely compared with him you saw going toward the blacksmith shop ?"

This was objected to as irrelevant, immaterial, and not proper proof of identity. The objection was overruled, and exception taken.

The question was competent. The reason given at the argument, why it should have been excluded, viz: that the evidence admissible under it was of too uncertain a character, seems to us to be of no weight. The answer was that the person in question was "about the same size as Stokely, no difference in height," which is certain enough, and the object of the question was proper, viz: to identify one of the persons present when the stabbing was done; to fix his size as that of defendant, was a direct step towards doing so.

We perceive no error in the instruction of the court below which is excepted to. We do not understand it to express the opinion that the evidence warranted a verdict of murder in the second degree, but that there was evidence proper for their consideration, upon which they might find such verdict, if satisfied thereby of the defendant's guilt.

Murder in the second degree is defined in our law, as the killing of a human being without authority of law, perpetrated by any act eminently dangerous to one or more persons, evincing a depraved mind regardless of the life of such person or persons, although without any design to effect death.

If done with such premeditated design, it would be murder in the first degree.

The defendant contends that the prosecution is bound to make out affirmatively, not only that the killing was unlawful, and perpetrated by such an act as aforesaid, and

evidencing such depraved mind, but also, that it was without a design to effect death. This is evidently a mistake. If the prosecution, on this indictment for murder in the first degree, proves the unlawful killing under the circumstances above stated, and fails to prove a premeditated design to effect death, the defendant must be acquitted of murder in the first degree; but such design not being made out, the killing, nevertheless, stands proved, and proved to have been done in the manner aforesaid, without any design proved to effect death, that is, it is proved to be murder in the second degree.

The defendant's theory would require the prosecution to negative, by affirmative proof, the very fact which it has to prove affirmatively, to support the charge in the indictment.

The deceased was stabbed in the belly, by an underhanded blow with a knife, an act certainly eminently dangerous to life, and which could only be done by a person regardless, at the time, of the life of the deceased. If done in self-defense, it is justifiable homicide, if in heat of passion on sudden provocation, or in sudden combat, though intentionally, it is not murder, but manslaughter. It does not in those cases evince that depravity of mind necessary to the perpetration of such an act in cold blood; the heart regardless of social duty, and fatally bent on mischief, of the common law. But if no such circumstances of self-defense, or whereby the blood of the homicide might have been heated, appears, such an act is certainly evidence of the depraved mind contemplated in the statute, and would justify a verdict of murder in the second degree. It is no more the duty of the prosecution to show affirmatively that no such circumstances of justification, extenuation, or qualification, attended the act, than to prove affirmatively that it was without design to effect death.

The defendant contends, however, that such circumstances were proved. Whether they were or not was for the jury to say. By their verdict, they have said that they were not, and in our judgment rightly.

A careful consideration of the evidence fails to present to our minds the killer of George Northup in the attitude claimed for him by the defense; *i. e.* either of self-defense, or of one meeting the deceased unexpectedly, whereupon a sudden conflict ensues, during which blows are exchanged almost simultaneously, the deceased striking the first blow.

Upon our minds, the evidence leaves the impression of the deceased receiving his death wound from one of a party of three persons, who closed in on him with evidently hostile intentions, and just as he has picked up a stick, or stone, for the purpose of defending himself against them, and which, as he is stabbed, he strikes with, or throws at his slayer.

There is evidence to show that these persons had been in the pursuit of Charles Northup, but nothing to show any provocation given to them by the deceased, though their animosity would seem to have been directed towards him by his calling to his brother, which they may have supposed to indicate an intention to assist him against them.

The defendant contends also, that the evidence does not justify the verdict, because there was no evidence to identify the defendant directly with the stabbing.

As to that, it was for the jury to say whether the evidence satisfied them beyond a reasonable doubt, that the defendant was the person who stabbed the deceased; by their verdict they say that it does. Their decision will not be reversed, unless the evidence is manifestly insufficient to warrant such a finding. *State vs. Miller*, 10 *Minn.* 313. This we cannot say of it. It seems clear enough that the

defendant joined the pursuers of Charles Northup at the meat market, and went round it, and into the potato patch with McGovern and one or two more, in pursuit of him, and that it was by one of this party, that the deceased was stabbed.

Upon the question as to which of them it was, the evidence so far as it tends to identify any one of them, points to the defendant, though it is true that no one witness swears positively to him, as the man who struck the blow; but there is evidence which tends to identify him as such, and this being so, it would be usurping the province of the jury to say that it was manifestly insufficient to satisfy them beyond a reasonable doubt, that he is the man.

The order denying a new trial must be affirmed.