Kidder, J.
The defendant in the court below was convicted at the November term of the District Court, within and for fh'e *123 subdivision cpmposed of the counties of Minnehaha and McCooS^ A. D. 1881, of murder, — the lulling of his wife, Mary Egan.
(1.) The first error assigned was the overruling the motion for a change of venue, under section 285, Criminal Procedure, upon, the ground that a fair and impartial trial could not be had in this subdivision. This motion was based — -first, upon the affidavit of the defendant; and, second, upon the affidavits of the publishers of three newspapers published in Sioux Falls, in the county of Min-nehaha, viz: The publisher of the Times, the Pcmtagmph and the Independent.
The affidavit of the defendant stated that he had made diligent inquiry through friends and counsel and was informed by them and believed that a prejudice existed to the extent that he could not have a fair and impartial trial.
It also further stated that certain persons, the two Yan Hornes and one Yan Demart, were unfriendly and hostile towards, and had been active in influencing the prosecution against him; and that some of the friends of the deceased, consisting of certain prominent families residing in the village of Sioux Falls, in which the deceased had worked at times prior to the homicide, had made denunciatory statements against the defendant.
And it also appeared by affidavits that some 1,450 copies of the papers before mentioned were in circulation in the two counties, and that fourteen of the jurors drawn from Minnehaha county were or had been regular subscribers for these papers.
This was, in substance, the showing made by the defendant in support of his motion.
In opposition, the prosecution presented counter affidavits of several prominent citizens of extensive acquaintance throughout these counties, which contained positive averments, “ that there “ had never been any public excitement in said counties concerning “ the action, and that there is not any public prejudice in either *124 “ of said counties against the defendant which would prevent a fair “ and impartial trial.”
This section (285) provides that criminal actions, when the offense charged in the indictment is punishable with death or imprisonment in the territorial prison, may at any time before trial is begun, be removed from the court in which it is pending, on the application of the defendant, whenever it shall appear to the satisfaction of the Court, by affidavit, (or if the Court should so order, by other testimony,) that a fair and impartial trial cannot be had in such county or subdivision.
This statute differs but slightly in language from that of the California (Penal Code, 1095,) but is clearly capable of receiving the same construction, as the meaning and requirements are unquestionably the same. The one says, “ whenever it shall appear “ to the satisfaction of the Court by affidavit;” and the other says, “if the Court be satisfied that the representation of the defendant “ be true,” etc., the removal may be made.
In the case of People v. Congleton, 44 Cal., 95; in People v. Thaler, 28 Cal., 495; in People v. Mahoney, 18 Cal., 186, and in People v. McCauly, 1 Cal., 383, the character and sufficiency of the affidavit filed for a change of venue, under the Statute, were considered and passed upon; and as was also in that of the People v. Yoakum, 53 Cal., 566. In the latter case the Court defined the correct rule of practice to be observed in applications of this character, and the requisites of the affidavits to be the same as set forth in the case of People v. McCauly, above cited, which case was cited by counsel for defendant: “ That the affidavits must state “ the facts and cvrcumstances from which this conclusion is de“duced, that a fair and impartial trial cannot bo had; the Court “ must be satisfied from the facts pomt/hely sworn to in the affi- “ davit and not from a general conclusion to which the defendant “ may swear or which his witnesses may depose they verily del/ieve “ to be true.”
*125 The only positive averments in the affidavits of defendant in this case were as to the hostility and efforts of the three witnesses, Yan De Mark and the two Yan Hornes, and the unfriendly utterances of some of the friends of the deceased in Sioux Falls, which of themselves certainly are not sufficient to establish the fact of there being such a prejudice and bias existing against the defendant in the minds of the people in’the counties of Minnehaha and McCook, as to prevent a fair and impartial trial. The affidavits of the three publishers were only as to the number of the circulation of their papers, and were silent as to the condition of the public mind or feeling. The exhibits accompanying the affidavit, (the newspapers containing the account of and comments upon the homicide published immediately after the occurrence,) either alone or with the affidavits, were not such facts as the rule contemplates and defines as essential to the sufficiency of an affidavit, and especially when the Statute (Code of Criminal Procedure, Sec. 334,) expressly asserts that “no person shall be disqualified as a juror “ by reason of having formed or expressed an opinion * * * * “ founded upon rumor or statements in ptiblic journals.” Why should the Court ignore the theory of the statute, and conclude that newspaper statements published some eighteen months prior to the application for change of venue, had created such a bias and prejudice in the public mind that a fair and impartial trial could not be had?
.The affidavit of the defendant in this case is clearly insufficient, and its deficiency is not aided or cured by the supplemental affidavits of the three publishers and the exhibits. And were it sufficient to establish a prima facie case for the defendant, the counter affidavits presented on the part of the Territory preponderate that of the defendant.
We think the rule established by the California courts, supra, the correct one, as well as'the doctrine laid down in the State v. *126 Stahly, 16 Minn., 282, which also declares that facts must be shown sufficient to satisfy the Court that it is necessary for a change to be granted in order to secure a fair and impartial trial. In the case at bar the defendant states in his affidavit that he was informed and believed “ that a prejudice existed to the extent “ that he could not have a fair and impartial trial.” This is not sufficient.
(2.) The exception taken to the testimony given by Dr. Allen (who was at the inquest) in response to the question of the prosecutor, “ From your examination, doctor, state from what direc- “ tion the blows came that produced those wounds?” we think is not well founded. The case, Kennedy v. The People, 39 N. Y., 245, cited by the defendant’s counsel, affirms this theory.
(3.) Neither was the question, “ What in your opinion pro- “ duced the mark or scar across the neck which you have spoken “ of?” objectionable. The doctor was testifying as an expert and as an eye-witness what the dead body of the supposed murdered woman displayed to him as the cause, or one of the causes of her death, and the answer of the doctor as to the cause of the death, after it was established that death ensued through unlawful means, did not identify the defendant, Egan with the offense, or any person whatever.
(4.) The evidence of J. B. Hawley and the plats or diagrams offered and admitted in evidence on the part of the prosecution were competent and relevant. The foundation for their admission had been properly laid — Mr. Hawley was shown to have been a practical surveyor and civil engineer of several years experience— his competency to perform the survey and perfect the diagrams of Egan’s premises where the homicide had evidently occurred, was clearly shown before his testimony and the introduction of his well prepared diagrams were admitted.
(5.) The objection to the introduction of the wooden picket- *127 pin found upon .the premises of Egan the day after the inquest, was not tenable. Dr. Olney, another expert, and as one, testified to the blood and hair upon the pin. The daughter of the deceased (Mrs. Yan Iiorne) also testified as to the color of her mother’s hair -being the same as that upon the pin. Dr. Allen also previously in his evidence as to the nature and character of what he declared might have been fatal wounds, had testified that those wounds could have been made with an instrument blunt edged. This pin having been found so soon after the supposed murder and so near the scene of the tragedy and bearing marks that indicated its use in a manner that established at least a circumstance cotemporaneous with the possible means of the death of Mrs. Egan, was a fact sufficiently connected with the homicide to render it admissible and proper for the jury to consider.
(6.) As to the exception of the defendant in which the learned counsel has expressed “great confidence ” as to the inadmissibility of the declaration of Egan at the time of his arrest, the record shows that James Yan Horne, Erank Yan De Mark and one War-ran, all neighbors who were living in the immediate vicinity of Egan’s premises, had been informed by “ Tommy.” a little son of the accused, that his mother was found dead in the cellar, and that his father had instructed him to apprise them (or his sister, Mrs. Yan Horne, daughter of the deceased,) of the fact; that these men immediately repaired to the house of Egan, found no person there, and upon an examination of the cellar discovered the dead body of Mrs. Egan, bearing marks of violence and covered with blood; that upon their coming out of the cellar, Egan makes his appearance at the door; Yan Horne turns and says: “Egan, “what is up?” Egan threw up his hands and says: “What?” Yan Horne again says: “Egan, what’s up?” Egan replies: “ Oh! Mary is dead.” Yan De Mark then says: “ Egan, you “ know how she came into the cellar, and you might as well own it up,” and told him they were going to arrest hini, under such' *128 circumstances, without papers, to which Egan replies: “ I can’t “ go with you for there is no one to take care of the cattle.”
The above is all the language claimed by either party to have been used or statements made by Egan at that time. The declarations of Egan are claimed by his counsel to have been inadmissible for the reason that his words gave no consistent account of his discovery of the body, showing no concern about her death, and were declarations from which guilt is to be inferred, and claiming in his argument that the declarations were induced by fear and threats.
The record shows no act on the part of Yan De Mark, or either of the others with him at the time, that they did anything to intimidate him, to induce fear on the part of Egan, or held out any promise of favor. True, the evidence is that one of the party had a loaded gun in his possession, but no use was made of it, nor any threats or move made by the person carrying it to indicate its intended use against Egan. That confessions or declarations made by a party charged with crime to a person in authority must be volwntwy to be admissible in evidence is not disputed, and the Court is to determine as to the admissibility. The language of Egan there used could not of itself be possibly construed as a confession. It was neither an admission nor a denial of the offense charged. It was a declaration or statement from which a person hearing might in connection with surrounding circumstances possibly infer guilt; and if made while under, or with threats of wrest simply, even if the person is excited or frightened on account of the arrest, there being no other threats and no inducements of favor or otherwise held out, they are clearly admissible.
(7.) As to the charge of the Court, wherein he says: “The “ law defines malice to be a wish to vex, annoy, or injure another, “ and the jury may consider the evidence, if any, introduced on the “ part of the prosecution as to threats, prophecies, menaces, or ill *129 “ treatment during the life time of deceased as to the question of “ malice.”
This includes the definition of malice as given by our Code, page 839, section 772; but it is claimed that this applies only in case of assault and battery, malicious mischief, or libel, or in any case in which malice is the gist of the offense, and as being inconsistent with premeditated design necessary to constitute criminal intent in murder.
The authorities are uniform upon the question of malice; although not in the exact language of our statute, they all define in substance malice to be that state of mind or act when one willfully does that which he knows will injure another’s person or property; premeditation under our statute, not requiring any fixed period of time to establish its existence. If malice as above defined is once established and the commission of a crime follows, and is also proven, it is perpetrated with malice aforethought or premeditated design.
(8.) The charge relative to circumstantial evidence (and to which portion there were exceptions,) was: “The evidence of circum- “ stances is to be taken by you the same as evidence of direct and “ positive acts. It is to be received by you in the light of reason “ —in the light of actual results. All evidence is more or less cir- “ cumstantial. All statements of witnesses, all conclusions of jurors “ are the result of inference. There is no ground for distinction “ between circumstantial and direct evidence.” , This we hold to be the law, and when considered with the evidence as shown by the record in this case, and further considering the whole, or the balance of the charge upon this point as given, it seems to have been a clear, plain and appropriate charge.
(9.) Defendant’s counsel also excepted to a portion of the charge, which was as follows: “ Under any and all circumstances “ a witness’s character may be tested by the party against whom *130 “ that witness is brought by proof of his general character for truth “ and veracity in the community where the witness resides,” claiming that it contained an unfavorable inference against the prisoner because he did not impeach the witnesses brought against him, by proof of their general character for truth and veracity. Whether this portion was objectionable or not, it should be considered with another part in the same connection, which was as follows: “You “ may take into consideration also that a witness has been corroborated by other witnesses. You are not to discredit a witness “ upon a mere imaginary idea of a person’s want of credit. It is “ from the facts and circumstances — from the surroundings — that “ you are to judge of the credibility of witnesses, not from mere “wanton opinion that a witness is to be disbelieved;” and, when so considered, the exception is not well taken.
(10.) He also excepted to the following charge: “ I don’t say “ to you that you are bound to believe a witness who testifies to a “ material fact that is wholly uncontradicted, but there is nothing “ that requires you to discredit a witness who testifies to a material “ fact uncontradicted, and especially if another witness testifies to “ the same fact.” In our opinion, the reasonable construction and interpetation of this is, that the jury were thereby permitted, as the law declares them, to be the exclusive judges of all questions of fact, and that it was therein made plain to their comprehension that it was their province also to determine the weight of the testimony of all the witnesses.
This disposes of all the questions that were presented to us on the argument for our consideration. There appearing to be no error in the record, the judgment of the court below is
Affirmed*
All the Justices concurring.

The defendant, Thomas Egan, was re-sentenced, and at Sioux Falls, on the J3th day of July, A. D. 1882, was executed.