State, *ex rel.* Arthur E. Hemmings, v. D. C. Coleman, Sheriff, Dade County.

187 So. 793.
Division A.
Opinion Filed September 27, 1938.
On Rehearing April 4, 1939.
Rehearing Denied April 24, 1939.

*J. H. Swink,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* and on Rehearing, *Thomas J. Ellis,* Assistant Attorneys General, and *Thomas H. Anderson* and *Rob't R. Taylor,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment in habeas corpus proceedings remanding petitioner to the custody of the Sheriff.

Petitioner was indicted by a grand jury of Dade County, Florida, for the crime of perjury alleged to have been committed in a judicial proceeding, to-wit: an investigation by the grand jury of Dade County. The indictment was certified to the Criminal Court of Record and there Petitioner was tried and convicted.

Pleas in abatement were interposed alleging that the indictment on which the information was based was void because, while a subpoena had been issued commanding the Petitioner to appear and testify before the grand jury in connection with its investigation of the matter alleged in the indictment, no subpoena was ever served on him and, therefore, the oath administered to him was without authority of law and could not constitute the basis of a charge of perjury.

After conviction, the Petitioner in his petition for habeas corpus, alleged:

"That the grand jury of the State of Florida in and for the County of Dade, duly empanelled and sworn, had under investigation before it, on April 9th and 10th, 1937, and various other days after said time, the discrepancies and misuse of materials and supplies in the Maintenance Department of the Dade County Board of Public Instruction, all of which will appear from a copy of a portion of the report of said grand jury, entitled Dade County Board

of Public Instruction, as said report is recorded in Book 102, page 352, of the public records of Dade County, Florida.

"That said grand jury had before it on April 9 and 10, 1937, a large number of witnesses who testified that this Petitioner, Hemmings, had taken large amounts of material and money, the property of the School Board, without the permission of the School Board, and used said property and money in the building of a house for the said Arthur E. Hemmings; and the said grand jury, so having such evidence before it, did cause the said Arthur E. Hemmings to be duly and regularly brought before it by subpoena, the said Arthur E. Hemmings was then and there duly and lawfully sworn to speak the truth before such investigating body; that the State Attorney in charge of said Grand Jury did warn the said Petitioner that anything he might testify to would be used in evidence against him, and that after said warning, the said Hemmings was examined and cross examined by several members of said grand jury and by the said State Attorney, as to the larceny, embezzlement and obtaining of Dade County School Board property by the said Arthur E. Hemmings, and that as to such matters upon which he, the said Arthur E. Hemmings was being interrogated, the said grand jury, prior to the said interrogation of said Arthur E. Hemmings, had evidence sufficient to return an indictment against the said Arthur E. Hemmings for embezzlement, obtaining money under false pretenses, and grand larceny; and that neither this said grand jury, nor any member of the said grand jury nor the State Attorney thereof, warned the petitioner, or explained to said petitioner, that they had sufficient evidence against him to return an indictment thereon against him, but, without the aid of friend or counsel, they examined and cross examined said Arthur E.

Hemmings and he, the said Arthur E. Hemmings, so the grand jury thereafter in its indictment alleged, did then and there, in the presence of said grand jury, commit the crime of perjury; that after the said Arthur E. Hemmings had testified before said grand jury and been excused, the said grand jury did then and there return indictments, against the said Arthur E. Hemmings for obtaining money under false pretenses, for grand larceny, and for embezzlement, and in addition thereto did return an indictment against the said Arthur E. Hemmings for perjury committed in the presence of said grand jury.

"That thereafter the County Solicitor in and for the County of Dade, State of Florida, in the Criminal Court of Record, in and for said County, did file an information for each of said crimes, based on said indictments, and on the 7th day of January, 1938, in the Criminal Court of Record in and for Dade County, Florida, the said Arthur E. Hemmings was tried and sentenced by the Court to three years in the State Penitentiary."

If the information is void, as contended by the petitioner, then there was no basis in law for the judgment of conviction and the convicted petitioner may procure his release in habeas corpus proceedings, although the same end might be accomplished by direct review on writ of error to the judgment of conviction.

In the case of State, *ex rel.* Stewart, v. Coleman, 122 Fla. 368, 165 Sou. 272, we said:

"The witness is not within the jurisdiction of the court until he has been served with process and without the service of process, or some valid order of court, the witness is not required to testify. And, when served with process, or some valid order of the court, he is not required to testify about other matters or before other courts or the officers or agencies thereof, except those named

in the process or court order. It follows that the petitioner in this case, not having been required by process or by order of court to testify before the State Attorney in an investigation being made by him separate and apart from the Grand Jury that she was not lawfully required to take the oath administered and the State Attorney was not authorized to administer that oath under those conditions and the judgment must be reversed with directions that petitioner be discharged."

Section 5343 R. G. S., 7477 C. G. L., prescribes the conditions under which one may be punished for perjury committed in judicial proceedings and fixes the penalty for same, as follows:

"Whoever being lawfully required to depose the truth in any proceedings in a court of justice, commits perjury, shall be punished if the perjury is committed on the trial of an indictment for a capital crime, by imprisonment in the State prison for life or any term of years; and if committed in any other case, by imprisonment in the State prison not exceeding twenty years."

So, at the very threshold of consideration of this matter, we find that the statute applies only to one who is *lawfully* required to depose the truth in any proceedings in a court of justice. The statute does not apply to one who is unlawfully required to depose the truth in any proceeding in a court of justice. Then the question left for our determination is, whether or not when embezzlement is the subject matter of an investigation by a grand jury, may one accused of such embezzlement, or under investigation as a suspect of the crime of embezzlement, be lawfully required to appear and testify before the grand jury in regard to such alleged embezzlement?

We think the answer must be in the negative.

The statute granting immunity from prosecution in this State is Section 6017 R. G. S., 8311 C. G. L. and that statute does not grant immunity in cases of embezzlement but is confined to investigation or proceeding, or trial for a violation of any of the statutes of this State against bribery, burglary, larceny, gaming or gambling or the illegal sale of spirituous, vinous or malt liquors.

Section 12 of the Declaration of Rights provides:

"No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation."

The Fifth Amendment to the Constitution of the United States provides:

"No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Our disposition of this case is not dependent on this provision of the Federal Constitution, but Federal Court decisions based on this provision may be relied on as authority for our disposition under a similar provision of the State Constitution.

In the case of People v. Gillette, 111 N. Y. Supp. 133, it was said:

"The grand jury which found the indictment at the time

the perjury is alleged to have been committed was making an investigat on for the purpose of ascertaining, among other things, whether officers of life insurance companies of the State of New York had viol.ted any of the criminal laws of the State, which crimes, if committed, were triable in the county of New York. A subpoena was regularly issued requiring the defendant to attend· before that body and give evidence· in a proceeding entitled 'The People of the State of New York v. John Doe, *et al."* In obedience to the subpoena, he went before the grand jury and the usual oath being administered answered that he affirmed. He was not informed of the nature of the investigation or the purpose of his testimony. After he had stated that there were accounts kept in certain banks by committees and officers of the Mutual Life Insurance Company—the funds therein being used for confidential purposes—he was asked:

" 'Q. What is the account that is in Mr. Field's bank at Dobb's Ferry?

" 'A, That is my personal account.

" 'Q. Where does that money that was deposited there come from?

" 'A. Came from my personal account."

"Immediately thereafter, and without leaving the w,tness stand, he stated that he had received from time to time from certain officers of the insurance company various amounts of cash to be used for confidential purposes in the interest of the company; that he did not personally disburse the money, but paid out as directed; that this money he at first kept in a safe belonging to himself, but later deposited it in the Dobb's Ferry Bank· in the account referred to; that the money, in fact, belonged to the insurance company, and that he for sometime had endeavored to return it, and had gone so far as to take counsel on the subject; that he had

never used it in his personal affairs but only for confidential purposes of the company. The perjury charged in the indictment and for which defendant has been convicted consists solely of the answers to the two questions above quoted.

"The Constitution of this State provides that:

" 'No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury. * * * Nor shall he be compelled in any criminal case to be a witness against himself.' Article 1, Sec. 6.

"The fifth amendment to the Federal Constitution contains a similar provision, The Code of Criminal Procedure (Section 10) also contains a provision to the effect that:

" 'No person can be compelled in a criminal action to be a witness against himself.'

"A proceeding before a grand jury, for the purpose of determining whether or not a crime has been committed is a 'criminal case' within the meaning of the constitutional provision. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; People, ex rel. Taylor, v. Forbes, 143 N. Y. 219, 38 N. E. 303. The investigation which the grand jury had under consideration at the time defendant is alleged to have committed perjury, while ostensibly directed against John Doe, et al., was in fact one against the defendant himself and other officers of insurance companies. He came just as much within the scope of the investigation as though he had been designated by name. It was a violation of his constitutional right to require him to attend before the grand jury and take an oath. When he took the oath, he thereupon became a witness, and the constitutional provision is that he could not 'be compelled in any criminal case to be a witness against himself.' An indictment obtained against him in that way

would be invalid, and he could not be convicted of perjury for the testimony which he gave, inasmuch as the oath could not be legally administered to him. The charge of perjury cannot be sustained, unless it be first proved that the testimony was given in an action or proceeding where an oath is authorized by law, and that the person charged took an oath in one of the forms recognized by law. O'Reilly v. People, 86 N. Y. 154, 40 Am. Rep. 525; Case v. People, 76 N. Y. 242; Lambert v. People, 76 N. Y. 220, 2 Am. Rep. 293; Ortner v. People, 4 Hun. 323; People v. Albertson, 8 How. Pr. 363; People v. Tracy, 9 Wend. 265."

Again in that opinion it was held:

"A person against whom the inquiry of the grand jury is directed should not be required to attend before that body, much less be sworn by it, and, if he is, and an indictment be found, it should be set aside upon motion, and, if not, if the fact appears upon the trial, it will invalidate a conviction if one be had. People v. Singer, 18 Abb. N. C. 96; People v. Haines, 6 N. Y. Cr. R. 100, 1 N. Y. Supp. 55; State v. Froiseth, 16 Minn. 295 (Gill. 260) Boone v. People, 148 Ill. 440, 36 N. E. 99; U. S. v. Edgerton (D. C.) 80 Fed. 374. In U. S. v. Edgerton, *supra*, the court in setting aside the indictment, said:

" 'It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed or knowing that his own conduct was the subject under investigation. * * * Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof nor the policy of the law to require it, and the injury done to the public in such case outweighs that suffered by the defendant.'

"Here it sufficiently appears in this record—to say nothing of the appeal from the order denying a motion to set

aside the indictment—that the defendant's constitutional rights were violated when he was required to attend and testify before the grand jury."

To like effect is State v. Caperton, 276 Mo. 314, 207 S. W. 795.

In State v. Foulkner, 175 Mo. 611, 75 S. W. 116, it was said:

"It is intolerable that one whose conduct is being investigated for the purpose of fixing on him a criminal charge should in view of our constitutional mandate, be summoned to testify against himself and furnish evidence upon which he may be indicted. It is a plain violation both of the letter and of the spirit of our organic law."

In United States v. Bell, 81 Fed. (old series) 830, the United States Circuit Court of the Western District of Tennessee, referred to the Federal Constitutional provision above quoted, said:

"This protection applies just as much for suspected persons as for accused persons, the language of the constitution being: 'No person shall be compelled in any criminal case to be a witness against himself'; and in the very case that Mr. Justice Brown was deciding for the supreme court of the United States the witness had not been accused in any formal and ceremonious indictment and was only a witness before the grand jury to give evidence against another. And this point was also decided in the case of Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195. In Brown v. Walker, just cited, it was held that the case was an exception to this principle of protection only because the interstate commerce statutes had taken the witness entirely outside the domain or criminal prosecutions by a statutory pardon, with which feature of this case we shall presently deal. Similar expressions of indignation against the inquisitorial system are to be found in the case

of Boyd v. U. S., *supra;* In the case of Interstate Commerce Commission v. Brimson, 154 U. S. 447, 478, 15 Sup. Ct. 1125; in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195; *In Re* Pacific Railway Commission, 32 Fed. 241, 250; by Mr. Justice Field; by Mr. District Judge Grosscup in the U. S. v. James, 60 Fed. 257; and in many other cases and by juridical writers and publicists everywhere.

"I wish again to call attention to the case of Brown v. Walker, to remark that Mr. Justice Brown in that case very carefully states the limitations that exist upon this prohibition against inquisitorial examinations, for the purpose of self incrimination and refers to the classes of cases that constitute an apparent exception to the general prohibition as follows:

"'Stringent as the general rule is, however, certain classes of cases have always been treated as not falling within the reason of the rule, and therefore constituting apparent exceptions. When examined, these cases will all be found to be based upon the idea that, if the testimony sought cannot possibly be used as a basis for or in aid of a criminal prosecution against the witness, the rule ceases to apply, its object being to protect the witness himself and no one else; much less that it should be made use of as a pretext for securing immunity to others.'

"Mark his language: 'If the testimony sought cannot possibly be used as a basis for or in aid of a criminal prosecution against the witness, the rule ceases to apply.' And mark particularly that he includes testimony sought to be used as a basis for a prosecution, as this testimony is now sought to be used in this prosecution for perjury. In other words, to allow such an inquistorial, self-incriminating examination to take place, the witness must be exempted absolutely from all prosecution, not only for offenses *aliunde*

the testimony he is then giving, but that testimony cannot be made the basis of a prosecution against him, and it is manifest that the immunity of the constitution cannot comprehend full protection unless this be so."

The records show conclusively that the petitioner was not lawfully required to depose and testify in the investigation referred to in the indictment. Therefore, the evidence given by him or statements made by him, before the grand jury concerning the matter then being investigated cannot be used as a basis for a prosecution for the crime of perjury.

The judgment is reversed and the cause remanded with directions that petitioner be discharged.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.

## ON REHEARING

CHAPMAN, J.—This case is here on writ of error to an order made and entered by the Circuit Court of Dade County, Florida, denying the petition a writ of habeas corpus. The petition for the writ alleged that Arthur E. Hemmings, petitioner, had been informed against by a grand jury of Dade County, Florida, placed upon trial and convicted in the Criminal Court of Record of Dade County of the crime of perjury and sentenced to the state penitentiary for three years; that the facts constituting the crime grew out of testimony given by petitioner before a grand jury of Dade County, Florida, pursuant to a subpoena served upon him and requiring him to appear and testify before it. Petitioner by the State Attorney was warned prior to giving testimony that anything he might testify to would be used in evidence against him. The petitioner was then ex-

amined and cross-examined as a witness before the grand jury by several members of the grand jury and the State Attorney as to larceny and embezzlement of property of the Dade County School Board.

Prior to the petitioner's appearance as a witness before the grand jury there was then before it sufficient evidence to support indictments for the crimes of grand larceny, embezzlement and obtaining money under false pretenses, and as to this fact the petitioner was not warned or advised; neither was it made known to him as to the sufficiency of the evidence then before the grand jury, and petitioner was without aid of counsel at said time. The grand jury, after the petitioner had appeared and testified before it, returned indictments against petitioner for the crimes of grand larceny, embezzlement, obtaining money under false pretenses and for perjury committed in the presence of or before the grand jury.

The petitioner further represented that he was convicted of the crime of perjury contrary to Section 8311 C. G. L., in that the petitioner did not waive immunity as a witness when before the grand jury, but did appear pursuant to a subpoena served upon him, and the testimony as given by him before it was not voluntary and that he was at said time immune from prosecution and not subject to the penalty inflicted upon him under the laws of the State of Florida, and that the State of Florida was estopped, as a matter of law, from prosecuting the petitioner for perjury. It appears that the State Attorney, during the progress of the trial of the charge of perjury, testified that petitioner had been fully warned by him as to his constitutional rights when he appeared as a witness and prior to his testifying before the grand jury.

Pertinent allegations of the petition are, viz.:

"That said grand jury had before it on April 9 and 10,

1937, a large number of witnesses who testified that this Petitioner, Hemmings, had taken large amounts of material and money, the property of the School Board, without the permission of the School Board, and used said property and money in the building of a house for the said Arthur E. Hemmings; and the said grand jury, so having such evidence before it, did cause the said Arthur E. Hemmings to be duly and regularly brought before it by subpoena, the said Arthur E. Hemmings was then and there duly and lawfully sworn to speak the truth before such investigating body; that the State Attorney in charge of said Grand Jury, did warn the said Petitioner that anything he might testify to would be used in evidence against him, and that after said warning, the said Hemmings was examined and cross examined by several members of the grand jury and by the said State Attorney, as to the larceny, embezzlement, and obtaining of Dade County School Board property by the said Arthur E. Hemmings, and that as to such matters upon which he, the said Arthur E. Hemmings, was being interrogated, the said grand jury, prior to the said interrogation of said Arthur E. Hemmings, had evidence sufficient to return an indictment against the said Arthur E. Hemmings for embezzlement, obtaining money under false pretenses, and grand larceny; and that neither this said grand jury, nor any member of the said grand jury, nor the State Attorney thereof, warned the petitioner, or explained to said Petitioner, that they had sufficient evidence against him to return an indictment thereon against him, but, without the aid of friend or counsel, they examined and cross examined said Arthur E. Hemmings, and he, the said Arthur E. Hemmings, so the grand jury thereafter in its indictment alleged, did then and there, in the presence of said grand jury, commit the crime of perjury; that after the said Arthur E. Hemmings had testified before said grand

jury and been excused, the said grand jury did then and there return indictments against the said Arthur E. Hemmings for obtaining money under false pretences, for grand larceny, and for embezzlement, and in addition thereto did return an indictment against the said Arthur E. Hemmings for perjury committed in the presence of said grand jury.

"That thereafter the County Solicitor in and for the County of Dade, State of Florida, in the Criminal Corut of Record, in and for said County, did file an information for each of said crimes, based on said indictments, and on the 7th day of January, 1938, in the Criminal Court of Record in and for Dade County, Florida, the said Arthur E. Hemmings was tried and convicted of the crime of perjury, and sentenced by the Court to three years in the State Penitentiary."

It is contended that the information filed in the Criminal Court of Record of Dade County, Florida, charging the petitioner with the crime of perjury while a witness before the grand jury was void *ab initio* and contrary to Section 8311 C. G. L., because the petitioner appeared before the grand jury in obedience to a subpoena served upon him and gave testimony about the loss of property owned by the School Board of Dade County, Florida, and there was then existing before the grand jury sufficient evidence to support informations of embezzlement, grand larceny, and obtaining money under false pretenses against the petitioner and the grand jury failed so to advise him and for said reason he was immune from the prosecution for perjury.

This Court has construed Section 8311 C. G. L. in Ingram v. Prescott, 111 Fla. 320, 149 So. 369, and Wilson v. State, 134 Fla. 390, 184 So. 31. It cannot be questioned that a grand jury has the right to summon or bring persons before it for the purpose of giving testimony on matters under investigation. The petitioner here appeared be-

fore the grand jury in obedience to a subpoena when the grand jury was investigating the larceny, embezzlement and loss of property owned by the School Board of Dade County. It is true that sufficient testimony was then before the grand jury to support informations for violation of the criminal laws of Florida against the petitioner in connection with this property. The State Attorney testified that the petitioner was advised of his constitutional rights while before the grand jury and prior to the time that he gave the (alleged) false testimony. It is true that a person in a criminal case cannot be compelled to be a witness against himself and this rule applies to witnesses summoned before a grand jury. This rule does not apply, however, where the accused testified voluntarily or waives his privilege. It has been held that it is no violation of the constitutional rights of a person accused to compel him by subpoena to appear before a grand jury, to administer an oath· to him and allow him to testify to incriminating matters against himself, when he makes no objections to testifying on account of privilege. See 28 C. J. 810, par. 108; 12 R. C. L. 1036-37, par. 21; Perlman v. United States, 247 U. S. 7, 38 Sup. Ct. 417, 62 L. Ed. 950; Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652; Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 28 Sup. Ct. 178, 52 L. Ed. 327.

The record shows, as testified to by the State Attorney, that the petitioner was advised that the grand jury would like to hear any explanation of the irregularities in connection with the property of the School Board if he cared to make any explanation. He was advised that he did not have to testify and had a right to refuse to answer any incriminating questions, and if he testified he would have to do so freely and voluntarily and that he would not be compelled to testify at all if he did not want to. The peti-

tioner answered and said that he would be glad for the privilege and opportunity of making the explanations if the grand jury thought they were irregular. The proceeding before the grand jury then developed upon which the present conviction was based. We think the petitioner waived his constitutional rights and there was no error in the order of the court denying the writ. The order appealed from is hereby affirmed. The original opinion entered in this cause in so far as it conflicts with this opinion, is hereby altered, modified and overruled. It is so ordered.

TERRELL, C. J., and WHITFIELD and BROWN, J. J., concur.

BUFORD, J., adheres to original opinion.

THOMAS J., concurs in conclusion.