Tommy BUTTERFIELD, Appellant,

v.

The STATE of Texas.

No. 881–98.

Court of Criminal Appeals of Texas.

April 21, 1999.

Jeffrey M. Friedman, Austin, for appellant.

Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which McCORMICK, P.J., MANSFIELD, KELLER, PRICE, HOLLAND, and WOMACK, J.J., joined.

Tommy Butterfield's stepdaughter was sexually assaulted, and Butterfield was a suspect. The State sought temporary custody of the child but she was missing. At a hearing held to find the child, Butterfield was asked about her whereabouts. He invoked his Fifth Amendment privilege against self-incrimination, but the judge ordered him to answer the questions. We are asked to decide whether the State may use Butterfield's statements at that hearing against him in a perjury prosecution. We hold that it may.

### I. Factual Background

At the hearing, Butterfield was asked many questions about the location of his wife and her daughter, whether he had heard from them or knew where they were, and whether he had any means of finding them. Initially, he refused to answer all questions, choosing to "exercise [his] Fifth Amendment rights." Then the court ordered Butterfield to answer the questions, and he agreed to answer some but not all of them. After some discussion among the lawyers and the court, the court ruled that Butterfield had to answer all the questions asked of him, which he then did.

The State subsequently indicted Butterfield for perjury based on the statements he made at that hearing. Butterfield filed a motion to suppress the statements on the grounds that they were obtained in violation of his privilege against self-incrimination. The trial court granted this motion, and the State appealed that decision.[1] The Court of Appeals affirmed, holding that Butterfield's Fifth Amendment rights had been violated and that his statements could not be used against him in the perjury prosecution.[2] We granted the State's petition for discretionary review of that decision.

### II. The Governing Law

#### A. The Privilege

■ The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself.[3] The Fifth Amendment privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.[4] The protection extends equally to civil proceedings because the nature of the protection goes to the questions asked, not the proceeding itself.[5]

#### B. Immunity

■ The logical corollary to a person's Fifth Amendment right not to incriminate himself is the concept of immunity.[6] Since the privilege against self-incrimination ceases only when liability to punishment no longer exists,[7] without the grant of immunity, the person cannot be compelled to testify.[8] Once a person has been granted immunity for his testimony, however, he does not have a valid basis for refusing

---

1. Tex.Crim. Proc.Code Ann. Art. 44.01(a)(5) (Vernon Supp.1999).

2. *State v. Butterfield*, No. 03–97–00085–CR, 1998 WL 104717 Tex.App. (Austin March 12, 1998) (not designated for publication).

3. U.S. Const. amend. V.

4. *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

5. *See In re Gault*, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967).

6. *United States v. Apfelbaum*, 445 U.S. 115, 124, 100 S.Ct. 948, 953, 63 L.Ed.2d 250 (1980) (grant of immunity must be coextensive with Fifth Amendment).

7. *Bryan v. State*, 837 S.W.2d 637, 643 (Tex. Crim.App.1992).

8. *Ex parte Muncy*, 72 Tex.Crim. 541, 163 S.W. 29, 38 (1913).

to testify.[9] If he nevertheless refuses to testify after having been granted immunity, he can be punished with contempt.[10] Thus, immunity statutes seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify.[11]

### C. Perjury

The one nearly universal exception to the scope of the immunity granted is that a witness who perjures himself while testifying under compulsion is not immune from a prosecution for perjury.[12] That the Fifth Amendment provides no protection for the commission of perjury "has frequently been cited without any elaboration as to its underlying rationale."[13] Requiring the testimony to be truthful does not in any way render the grant of immunity conditional, because the "law requires the answers of the witness under oath to be truthful."[14] Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings.[15] Neither the text nor the spirit of the Fifth Amendment confers a privilege to lie.[16]

### III. Analysis

### A. Fifth Amendment

■ In this case, the trial court ordered Butterfield to answer questions, despite Butterfield's assertion of his Fifth Amendment privilege. Neither the trial court nor the State's attorney offered Butterfield immunity for his testimony. The State does not contest the validity of Butterfield's assertion of the Fifth Amendment. We assume that Butterfield's assertion was valid, since he faced liability for tampering with a government witness by secluding his wife and step-daughter.

■ The trial court erred in compelling Butterfield to answer the questions without granting him immunity. The grant of the immunity is the only way to compel testimony after a valid invocation of the Fifth Amendment. Therefore, the trial court violated Butterfield's Fifth Amendment rights.

Indeed, the State concedes this much. That is, the issue the State presents which we granted for review is whether, when a witness is compelled to testify "in violation of the Fifth Amendment," the witness' testimony may be used against him in a perjury prosecution.

### B. Use of the statements in a subsequent prosecution

The Court of Appeals similarly concluded that Butterfield's Fifth Amendment right against self-incrimination had been violated. However, the Court then concluded that "our inquiry ends there." We disagree. On the contrary, our inquiry has only just begun. The question remains: despite that constitutional violation, can Butterfield's statements nevertheless be used against him in a perjury prosecution?

9. *Coffey v. State*, 796 S.W.2d 175, 179 (Tex. Crim.App.1990); *see also Ex parte Joseph*, 172 Tex.Crim. 355, 356 S.W.2d 789, 791 (App. 1962) (once granted immunity, witness could not decline to answer questions propounded to her).

10. *United States v. Mandujano*, 425 U.S. 564, 575, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976); *Ex parte Youngblood*, 94 Tex.Crim. 330, 251 S.W. 509, 512 (1923).

11. *Kastigar*, 406 U.S. at 445–46, 92 S.Ct. at 1656–57. See also Tex. Pen.Code §§ 43.06, 47.08, 71.04.

12. 2 Paul H. Robinson, Criminal Law Defenses § 205(a) (1984). See also Tex. Pen.Code §§ 43.06, 47.08, 71.04.

13. *Apfelbaum*, 445 U.S. at 127, 100 S.Ct. at 955.

14. *Ferrantello v. State*, 158 Tex.Crim. 471, 256 S.W.2d 587, 595 (1952).

15. *Mandujano*, 425 U.S. at 576, 96 S.Ct. at 1776.

16. *Brogan v. United States*, 522 U.S. 398, ——, 118 S.Ct. 805, 810, 139 L.Ed.2d 830 (1998).

The Supreme Court has often approved the use of compelled testimony in later perjury prosecutions. But in each case the Court held that no Fifth Amendment violation had occurred.[17] The Supreme Court has not decided whether the State can use testimony obtained in violation of the Fifth Amendment in a perjury prosecution.

We addressed a similar issue in an isolated case nearly 100 years ago. In *Twiggs v. State*, 75 S.W. 531 (1903), the defendant was convicted of perjury based on statements he made before the grand jury. Because he had not been informed that he was a suspect at the time of his testimony, we held that his statements before the grand jury were involuntary and could not be used against him. We reversed the perjury conviction. Our holding was based upon the statutory requirement that a suspect in custody be warned that his testimony could be used against him.[18] But the Supreme Court reached the opposite conclusion more recently in *Wong*. There, the Court held that the defendant's false testimony before the grand jury could be admitted in her perjury prosecution, despite the fact that she was unwarned of her Fifth Amendment privilege.[19] The Supreme Court reasoned that, regardless of the lack of a warning, "the Fifth Amendment does not condone perjury."[20] Therefore, *Twiggs* has essentially been overruled by the Supreme Court.

The Supreme Court has clearly stated that the Fifth Amendment provides no protection for the commission of perjury[21] and confers no privilege to lie.[22] The reason is that perjured testimony is an affront to the basic concepts of justice.[23] Although the Court found no Fifth Amendment violation in those cases, we believe the rationale is sound and applies equally when a Fifth Amendment violation occurs. To hold otherwise would grant an individual unbridled discretion to lie in a court of law, with no repercussions. That cannot be the purpose or intent of the Fifth Amendment.

Butterfield argues that this holding subjects him to the "cruel trilemma" of self-accusation, perjury or contempt.[24] However, the Supreme Court has recently recognized that this trilemma "is wholly of the guilty suspect's own making."[25] Even the honest and contrite guilty person will not regard the third prong of the trilemma, the blatant lie, as an available option.[26] On the contrary, Butterfield had two other reasonable options. First, he could have told the truth at the hearing, then moved to suppress his statements in any later prosecution on the grounds that they were obtained in violation of the Constitution. Second, Butterfield could have remained silent and, if the trial court held him in contempt, sought habeas relief from that contempt order.[27]

The "cruel trilemma" which Butterfield claims he faces is no different today than it

---

**17.** *Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250; *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *Mandujano*, 425 U.S. 564, 96 S.Ct. 1768; *Kastigar*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212; *Glickstein v. United States*, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911).

**18.** *Twiggs*, 75 S.W. at 532.

**19.** 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231.

**20.** *Id.* at 178, 97 S.Ct. at 1825.

**21.** *Apfelbaum*, 445 U.S. at 127, 100 S.Ct. at 955.

**22.** *Brogan*, 522 U.S. at ——, 118 S.Ct. at 810.

**23.** *Mandujano*, 425 U.S. at 576, 96 S.Ct. at 1776.

**24.** *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964).

**25.** *Brogan*, 522 U.S. at ——, 118 S.Ct. at 810.

**26.** *Ibid.*

**27.** *See Collins v. Kegans*, 802 S.W.2d 702, 705 (Tex.Crim.App.1991) (validity of contempt can be attacked only by way of habeas corpus).

was nearly five hundred years ago, when Sir Thomas More was called upon by King Henry VIII to recognize the King as the supreme head of the Church. More, a devout Catholic who believed deeply in the supremacy of the Pope, had three options: he could renounce his own faith and recognize the King; he could tell the truth about his faith and most surely be executed; or he could remain silent. More remained silent, and risked his life by doing so. He was later beheaded for treason.[28]

More refused to condemn himself by telling the truth, but he also refused to lie. His wife and children begged him to submit to the oath, but he refused on principle. Butterfield, on the other hand, chose to do what More would rather die than do: commit perjury. This, of course, was an option, but not one which the law will condone. The Supreme Court has repeatedly condemned the use of perjury to avoid self-incrimination. Today, we do the same.

### IV. Conclusion

We conclude that, despite the violation of Butterfield's Fifth Amendment rights, his statements can be admitted into evidence at his perjury trial. We reverse the decision of the Court of Appeals and remand this case to the trial court.

We note that the application of Article 38.23 of the Texas Code of Criminal Procedure is not before us in this case. Although the Court of Appeals mentioned the statute in passing, neither of the parties has briefed, either in this Court or in the Court of Appeals, the applicability of that statute. Thus, we do not decide whether the outcome would be the same under a statutory analysis.

The dissent argues that we have misread the Court of Appeals' holding. We respectfully disagree. In the "Discussion" portion of the court's opinion, the court analyzes solely Fifth Amendment law.

The court reasons that a Fifth Amendment violation occurred and that the "inquiry ends there." The court also distinguishes Supreme Court precedent on the Fifth Amendment. Then, in the "Conclusion" portion of the court's opinion, the court summarizes its analysis by holding that the trial court "could conclude" that the statements were suppressible. After this sentence, almost as an aside, the court states, "See ... Art. 38.23." The court does not set out or analyze the language of Art. 38.23 or explain its impact on this case. If the Court of Appeals were relying solely on Art. 38.23, we think the court would have made some mention of that statute in the "Discussion" portion of its opinion. We do not believe the Court of Appeals will be "astounded to learn what it has held in this case." [29]

JOHNSON, J. delivered a concurring opinion in which PRICE, HOLLAND and WOMACK, J.J. joined.

MEYERS, J. delivered a dissenting opinion.

JOHNSON, J., filed a concurring opinion in which PRICE, HOLLAND, and WOMACK JJ., join.

We granted review on two issues: (1) where a witness is compelled to testify in violation of the fifth amendment, and where a witness lies under oath, should the witness' testimony be suppressed in a subsequent prosecution for perjury, and (2) is the commission of perjury a lawful method of asserting one's fifth-amendment right against self-incrimination. This Court says today that the answer to each question is no. I concur in the judgment of the Court.

The majority appears to decide this case largely on the basis of decisions distinguishable from the instant case. *See Ante,* at 451 nn. 21–23. In those cases, there

---

28. *See, e.g.,* Robert Bolt, A Man for All Seasons (Random House 1962); www.wwlia.org/uk-more.htm.

29. *Ante,* 992 S.W.2d at 449 n. 5.

was no fifth-amendment privilege at stake, as the defendant had either voluntarily testified, thus waiving his right,[1] or was given immunity from prosecution based on his compelled testimony.[2] In contrast, the present case presents a situation in which it is undisputed that appellant's testimony was compelled *in violation* of his constitutional right. There appears to be only one Texas case and a few cases from other states that present situations very similar to the instant case. Although foreign cases are only persuasive authority, they may be instructive.

In our own decision in *Twiggs v. State,* 75 S.W. 531 (Tex.Crim.App.1903), we overturned a perjury conviction filed after the defendant gave false testimony to a grand jury, but without being warned as to his right to remain silent as was then required by statute.[3] We stated that "[w]here he is under arrest or constraint, or held as a witness, and testifies about an offense of which he is suspected, his statements in regard to such matters cannot be used against him, unless warned." *Id.* at 532.

In *State v. Caperton,* 276 Mo. 314, 207 S.W. 795, 795–796 (Mo.1918), the defendant was haled before a grand jury and compelled, under oath, to give testimony which, if truthful, amounted to a confession. He lied and was charged with perjury. The Supreme Court of Missouri reversed for the reason that the questioning was a serious violation of defendant's constitutional right not to be compelled to testify against himself.

The Supreme Court of Utah addressed a similar issue in *State v. Byington,* 114 Utah 388, 200 P.2d 723 (1948), *overruled on other grounds, First Fed. Sav. & Loan*

*Ass'n of Salt Lake City v. Schamanek,* 684 P.2d 1257 (Utah 1984). There, the defendant was compelled by the trial judge to testify at a contempt proceeding, and his testimony was thereafter used to prosecute him for perjury. *Byington,* 200 P.2d at 723–724. In reversing the conviction for perjury, the Supreme Court of Utah explained:

> Since he did not know that he had the right to refuse to answer[,] his only alternative was to admit his guilt or give false testimony. That persons shall not be placed in such a position is one of the purposes of [federal and state prohibitions against compelled self-incrimination]. Under such circumstances such evidence is not admissible in a subsequent prosecution for perjury otherwise the immunity from giving self-incriminating testimony would be of no value to him . . . If such testimony can be used against him in a case of this kind, then his privilege against self-incrimination may be violated and he can still be convicted as a result of such violation by the court. Such was not the intention of the framers of our Constitutions.

*Id.* at 725–726. In deciding the issue, the *Byington* court cited to both *Caperton* and *Twiggs.*[4]

In *State v. Coleman,* 137 Fla. 80, 187 So. 793 (1938), the Supreme Court of Florida similarly ruled that, because a defendant could not lawfully be required to testify before a grand jury investigating him for embezzlement, his compelled testimony about the embezzlement at that proceeding could not be used as the basis for a perjury prosecution. *Id.* at 798 (opinion on original submission).[5] Under similar cir-

---

1. *Brogan v. United States,* 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998); *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

2. *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

3. That statute appears to have evolved into Tex.Code Crim. Proc. art. 38.22.

4. *See also State v. Hutchison,* 114 Utah 409, 200 P.2d 733 (1948) (companion case to *Byington*).

5. On motion for rehearing, a majority of the Court decided that the defendant had waived his constitutional rights and had thus voluntarily testified; therefore, his statements could be used in the perjury prosecution against

cumstances, other courts have come to the same conclusion. *See O'Neal v. State*, 468 P.2d 59 (Okla.Crim.App.1970); *State v. Ruggeri*, 19 Utah 2d 216, 429 P.2d 969, 973 (1967).[6]

While these decisions support the decision of the Court of Appeals, I find them unpersuasive. Our decision in *Twiggs* was grounded in statute rather than a constitutional right. To whatever extent the foreign cases were based on federal constitutional law, they have been limited by the decision in *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977). The defendant in *Wong* was advised of her fifth-amendment privilege, but she did not understand the warning due to her limited comprehension of English. She then testified before a federal grand jury and lied. *Id.* at 176, 97 S.Ct. at 1824. The trial court found that the defendant had not been effectively warned of her fifth-amendment privilege and also accepted her testimony that she had believed that she was required to answer all questions. *Id.* at 177, 97 S.Ct. at 1825. Nevertheless, the Supreme Court noted that "even the predicament of being forced to choose between incriminatory truth and falsehood, as opposed to refusing to answer, does not justify perjury." *Id.* at 178, 97 S.Ct. at 1826 (citing *United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969)).[7]

Ms. Wong was not warned as to her fifth-amendment rights. In contrast, appellant in the instant case claimed his fifth-amendment right to silence, but was compelled to speak in violation of that right. *State v. Butterfield*, at 449. However, the Supreme Court, speaking in *Wong*, stated, "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them ... Indeed, *even if the Government could, on pain of criminal sanctions*, compel an answer to its incriminating questions, a citizen is not at liberty to answer falsely." *Wong*, 431 U.S. at 180, 97 S.Ct. at 1827 (emphasis added, citations and internal quotation marks omitted). The Supreme Court posed that circumstance as a hypothetical, but to appellant, it was reality. Appellant had two options: (1) to maintain his silence and contest contempt findings through habeas corpus, or (2) to answer truthfully and seek to suppress his testimony, if necessary later, as being acquired in violation of his fifth-amendment right not to incriminate himself.

The majority asserts that we must allow the perjury prosecution because "to hold otherwise would grant an individual unbridled discretion to lie in a court of law, with no repercussions [and t]hat cannot be the purpose or intent of the Fifth Amendment." *Ante*, at 451.[8] The most persua-

---

him. *Coleman*, 187 So. at 798–800 (opinion on reh'g).

**6.** In *Ruggeri*, the Utah Supreme Court again cited *Twiggs* in support of its decision, interpreting it to mean that "the court held that the testimony given before the grand jury was not admissible because the defendant was denied his privilege not to give incriminating evidence against himself even though he did not claim such privilege." *Ruggeri*, 429 P.2d at 974. *See also Id.* at 974–975 (citing *Byington* ).

**7.** In each of·the cases cited above, the compelled testimony would have directly incriminated the defendant in a criminal offense. *See O'Neal*, 468 P.2d at 66; *Ruggeri*, 429 P.2d at 970, 975; *Byington*, 200 P.2d at 724–725; *Coleman*, 187 So. at 794–795 (opinion on

original submission); *Caperton*, 207 S.W. at 795–796, *Wong*, 431 U.S. at 430–431, 97 S.Ct. at 1824. In the instant case, appellant was asked for information that *might lead* to incriminating evidence, but that, in and of itself, was not necessarily incriminating. *See State v. Butterfield*, No. 03–97–00085–CR, slip op. at 4, 1998 WL 104717 (Tex.App.—Austin March 12, 1998, pet. granted). However, the Court of Appeals found that his testimony was compelled in violation of his fifth-amendment right (*id.*), and the State does not dispute this finding.

**8.** If the Court of Appeals had determined that there had been *no* constitutional violation, then a subsequent prosecution for perjury would unquestionably be permitted. Thus, a defendant would not have even a hypothetical "unbridled discretion to lie" unless he was

sive opinion among the out-of-state cases on this matter offers, I believe, a better rationale as to why this perjury charge should be allowed to proceed. In *People v. Tomasello*, 21 N.Y.2d 143, 287 N.Y.S.2d 1, 234 N.E.2d 190, 190 (1967), the New York Court of Appeals dealt with the question of whether a target of an investigation who had been called before a grand jury was immune from prosecution for perjury if his testimony was ·found to be willfully false. Answering this question in the negative and citing Wigmore,[9] the court found that the privilege not to incriminate oneself "extends only to prosecution for past crimes and not to perjury committed in the very process of making the disclosure assertedly compelled." *Id.* at 193. Although Wigmore dealt specifically with statutes granting immunity, amnesty, indemnity, etc., the logic of his reasoning certainly applies to the case before us today:

> Immunity under these statutes need extend only to prosecution for past crimes—not to prosecution for *future crimes* or for *perjury* or *contempt* in connection with the very process of making the disclosure itself ... If argument were needed, it would be sufficient merely to appeal to the terms of the privilege, which forbids that one be compelled to give evidence against himself—for the perjured utterance is not "evidence" or "testimony" to a crime but *is* the very act of crime itself; the compulsion is not to testify falsely but to testify

forced to testify in violation of his right not to incriminate himself.

**9.** 8 WIGMORE, *Evidence* § 2282 (McNaughton rev.1961).

**1.** *See* Appendix for a copy of the Court of Appeals' opinion.

**2.** Code of Criminal Procedure article 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

truly; and the privilege by hypothesis would have been violated only if the witness had truly given self-incriminating evidence, but if he falsely exonerates himself, he has confessed no fact "against himself," hence his privilege has not been infringed by the actual answer even though it might have been by some other answer.

8 WIGMORE, *Evidence* § 2282 (McNaughton rev.1961).

For the foregoing reasons, I concur in the judgment of the Court.

MEYERS, J., delivered this dissenting opinion.

This case should be improvidently granted. The State misreads the Court of Appeals' opinion and directs its grounds for review and argument at a holding the Court of Appeals did not make.

The Court of Appeals' opinion has two parts. In Part I of its opinion, labeled "Discussion," the court first determines there was a Fifth Amendment violation. *Butterfield v. State*, No. 03–97–00085–CR slip op. at 4, 1998 WL 104717 (Tex.App.— Austin March 12, 1998)(not designated for publication)[1] ("Butterfield's testimony was compelled in violation of his Fifth Amendment right"). In Part II, labeled "Conclusion," the court then concludes the testimony, obtained pursuant to such violation, was suppressible, citing as the *sole* authority for this, our state exclusionary rule:[2]

In response to questioning in oral argument about the applicability of article 38.23, the State Prosecuting Attorney stated the testimony should not be suppressed under article 38.23, per this Court's opinion in *State v. Mayorga*, 901 S.W.2d 943 (Tex.Crim.App. 1995). *Mayorga* suggested that evidence is not "obtained" in violation of the law under article 38.23 if it was not already in existence before the state's illegal conduct. *Mayorga* is a plurality opinion, and is distinguishable as well. Regardless, the State does not complain about the Court of Appeals' holding under article 38.23.

Ironically, the majority notes "the application of Article 38.23 ... is not before us in this case." *Majority opinion* at 452. I could not agree more. The State fails to complain

The statements the State seeks to use were obtained in violation of Butterfield's Fifth Amendment right, and the trial court could conclude they may not be used as evidence against Butterfield in the subsequent criminal prosecution for aggravated perjury. *See* Tex.Code Crim. Proc. art. 38.23 (West Supp.1998).

*Id.* at 6. *Nowhere,* in either Part of its opinion, does the Court of Appeals hold, state, or even suggest the testimony was properly suppressed under some sort of Fifth Amendment exclusionary rule.[3] If indeed this was the Court of Appeals' holding, it surely would have expended at least a sentence of explanation or cited one analogous authority in support of such unprec-

edented holding.[4] The majority devotes pages of discussion to support its holding on this issue of first impression. From the Court of Appeals, not a single word.[5]

Despite this, the State Prosecutory Attorney's petition for discretionary review and supporting legal brief argue the Court of Appeals erred in holding the statements were suppressed under a Fifth Amendment exclusionary rule theory. The Court of Appeals held nothing of the sort. Because the State complains about something the Court of Appeals did not hold, this case should be improvidently granted. Expounding on an issue the Court of Appeals' opinion did not address, the majority is acting outside of its jurisdiction as a

about the only basis on which the Court of Appeals held the evidence was suppressible.

**3.** Because the Court of Appeals' opinion is unpublished, we attach it as an Appendix to this opinion.

**4.** For instance, the United States Supreme Court recognized in a similar situation:

Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. [footnote] While the general common-law practice is to admit evidence despite its illegal origins, *this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure. Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

*United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (emphasis added).

**5.** The majority's position that the Court of Appeals' "held" the evidence was suppressible under a Fifth Amendment exclusionary theory is based on the Court of Appeals' discussion of the Fifth Amendment violation:

The dissent argues that we have misread the Court of Appeals' holding. We respect-

fully disagree. In the "Discussion" portion of the court's opinion, the court analyzes solely Fifth Amendment law. The court reasons that a Fifth Amendment violation occurred and that the "inquiry ends there." The court also distinguishes Supreme Court precedent on the Fifth Amendment.

*Majority opinion* at 452. The majority cannot point to any holding or language in the Court of Appeals' opinion even suggesting the evidence was suppressible under a Fifth Amendment theory. The most it is able to come up with is the Court of Appeals' statement that "the inquiry ends there." That is, the inquiry ends upon its conclusion that there was a Fifth Amendment violation. Article 38.23 provides that evidence obtained "in violation of any provisions of ... the Constitution of the United States of America ..." is not admissible. Once the Court determined there had been a Fifth Amendment violation, no more needed to be said, since evidence obtained in violation of the law is excluded under article 38.23. The majority says if the Court of Appeals were relying on article 38.23 the court "would have made some mention of that statute in the 'Discussion' portion of its opinion." By this reasoning, then, if the Court of Appeals is relying on a Fifth Amendment exclusionary theory, wouldn't the court "have made some mention of that [theory] in the 'Discussion' portion of its opinion"?

No doubt the Court of Appeals will be astounded to learn what it has held in this case, and with so little effort. At the least, that Court will now surely question its decision to designate the opinion as unpublished, in light of the fact that the opinion embodies such a significant holding on an issue of first impression.

court of discretionary review.[6]

For these reasons, I dissent.

## APPENDIX

## TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

No. 03–97–00085–CR

The State of Texas, Appellant

v.

Tommy Wayne Butterfield, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT

NO. 0961962, HONORABLE BOB PERKINS, JUDGE PRESIDING

The State brings this interlocutory appeal, challenging the trial court's granting of a motion to suppress evidence in an aggravated perjury case. *See* Tex.Code Crim. Proc. Ann. art. 44.01 (West Supp. 1998). We will affirm the trial court's order.

## STATEMENT OF FACTS

Allegations were made that Butterfield's stepdaughter had been sexually assaulted.[1] Butterfield was a suspect in the assault. Butterfield's wife, Louisa agreed to place Butterfield's stepdaughter with another family for protection and further agreed not to contact her while unsupervised. Despite this agreement, on the day Butterfield's stepdaughter was scheduled for a medical examination, Louisa removed her from daycare, whereafter they both disappeared.

On February 23, 1996, another trial court held a civil hearing to determine whether the Department of Protective and Regulatory Services should be named temporary managing conservator of Butterfield's stepdaughter. Butterfield was subpoenaed to testify at the civil proceeding for the purpose of determining the location of his wife and stepdaughter. Butterfield attempted to exercise his Fifth Amendment right against self-incrimination in response to specific questions concerning the whereabouts of his wife and stepdaughter and any communications he had had with his wife. The judge ordered Butterfield to answer the questions. threatening to find him in contempt if he refused and to place him in jail until he answered. Faced with that choice, Butterfield answered the questions.

On May 7, 1996, Butterfield was indicted for one count of aggravated perjury and two counts of tampering with a witness. *See* Tex. Penal Code Ann. § 36.05 (West 1994 & Supp.1998) & § 37.03 (West 1994). Allegedly untrue testimony Butterfield gave during the course of the February 23rd civil hearing formed the basis of the aggravated perjury charge. Butterfield filed a motion to suppress the statements, and the trial court held hearings on the motion on July 2, 1996 and September 6, 1996. In its order granting Butterfield's motion, the trial court indicated the suppressed statements were those "particularly described in the oral ruling by the Court on 9/6/96." At the September 6, 1996 pretrial hearing, with regard to the perjury prosecution. the trial court suppressed all of Butterfield's testimony from the February 23rd hearing given after Butterfield tried to invoke the Fifth Amendment and the judge threatened to put him in jail.[2]

---

**6.** There are other problems with the majority's opinion. For instance, it makes a critical assumption of fact that the Court of Appeals did not make. The Court of Appeals expressly declined the State's invitation to "assume evidence exists which would establish the falsity of the specific statements made[.]" *Butterfield*, slip op. at 5. I am unaware of any authority under which, in a petition for discretionary review context, this Court has ever assumed a fact to be otherwise than as viewed by the Court of Appeals, particularly a fact of consequence.

**1.** To protect the victim's identity, we will refer to the victim as "Butterfield's stepdaughter."

**2.** In particular. the trial court suppressed all statements starting from page twenty-seven of the civil hearing statement of facts. The

In one point of error, the State appeals the trial court's granting of the motion to suppress, contending that the trial court erred in suppressing the statements because Butterfield had no constitutional protection permitting him to commit perjury.

## DISCUSSION

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991). At a hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court must view the evidence in the light most favorable to the trial court's ruling at the suppression hearing. *Carroll v. State*, 911 S.W.2d 210, 222 (Tex.App.-Austin 1995, no pet.). Where, as here, the record contains the ruling but no findings of fact or conclusions of law, the appellate court must presume that the trial court found whatever facts were needed to support its ruling. *Id.* An appellate court will not reverse that ruling without a showing of a clear abuse of discretion. *See Allridge,* 850 S.W.2d at 492; *Combest v. State,* 953 S.W.2d 453, 456 (Tex.App.-Austin 1997, no pet.).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Accordingly, a witness can refuse to answer any question that will subject him to criminal liability. *Tuffiash v. State,* 948 S.W.2d 873, 879 (Tex.App.-San Antonio 1997, pet. ref'd). If an inquiry calls for an answer that might reasonably present a hazard of self-incrimination, a witness may refuse to answer on the ground of privilege, and the fact that an inquiry is made in the course of a civil proceeding does not interdict the witness's

privilege. *See Ex parte Butler,* 522 S.W.2d 196, 198 (Tex.1975).

Here, Butterfield was subpoenaed to testify, under oath, in a court proceeding. As a suspect in his stepdaughter's sexual assault, Butterfield faced a legitimate hazard of self-incrimination in answering questions that might lead to the location of his wife and stepdaughter and evidence which could link Butterfield to the sexual assault. Despite this. the judge refused to allow him to exercise his Fifth Amendment right against self-incrimination and ordered him to testify under the threat of contempt. By presenting Butterfield with the three choices of testifying against himself, possibly committing perjury, or going to jail, the judge subjected Butterfield to the exact situation which the Fifth Amendment aims to prevent. *See Pennsylvania v. Muniz,* 496 U.S. 582, 596, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (citing *Doe v. United States,* 487 U.S. 201, 212, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)) (policy undergirding Fifth Amendment is unwillingness of Supreme Court "to subject those suspected of crime to the cruel trilemma of self-accusation. perjury, or contempt"); *South Dakota v. Neville,* 459 U.S. 553, 563, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (Supreme Court has long recognized that Fifth Amendment prevents State from forcing choice of "cruel trilemma" on defendant). Thus, Butterfield's testimony was compelled in violation of his Fifth Amendment right. *See Neville,* 459 U.S. at 562, 103 S.Ct. 916 (Fifth Amendment prohibits exertion of physical or moral compulsion on person. asserting the privilege); *Thomas v. State,* 723 S.W.2d 696, 704 (Tex.Crim.App.1986) (interpreting and defining moral compulsion to include offering defendant choices, one of which results in penalty, punishment or detriment from which defendant is entitled to be free).

Despite the State's urgings, our inquiry ends there. The State argues that the

---

State, however, stipulates on appeal that the trial court suppressed all of Butterfield's statements after page sixteen of the civil hearing statement of facts. We will decide the case based on the trial court's order and not on the State's stipulation.

Fifth Amendment does not permit Butterfield to commit perjury. The State's position, however, requires this Court to assume that Butterfield testified untruthfully after the judge refused to allow him to invoke his Fifth Amendment rights. In footnote three of the State's brief, the State asks "for the purposes of understanding the issue presented in this appeal ... that this Court assume evidence exists which would establish the falsity of the specific statements made by [Butterfield] which are detailed herein." Essentially, the State asks this Court to assume that Butterfield is guilty of the alleged perjury before he has even been tried. This is counter to the well-established legal presumptions that sworn testimony is presumed to be true and that an accused is innocent until proven guilty.

Additionally, the cases the State cites to support its position are distinguishable. In the bulk of cited cases, the witnesses never invoked their Fifth Amendment rights; rather, they chose to testify falsely in grand jury proceedings or file false affidavits or tax forms. *See United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977) (false statements given in grand jury testimony could be basis for perjury); *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (witness who chooses to commit perjury instead of invoking Fifth Amendment can be prosecuted for perjury); *Bryson v. United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969) (defendant should have availed himself of legal method for challenging affidavit requirement instead of choosing to include falsehoods in affidavit); *United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969) (defendant should have invoked Fifth Amendment right instead of filing false tax form). Thus, these cases are not controlling. In another case, the court actually suppressed statements given by a witness under com-

pulsion. *See United States v. Friedrick*, 842 F.2d 382 (D.C.Cir.1988).

## CONCLUSION

By refusing to permit Butterfield to exercise his Fifth Amendment right, the judge stripped Butterfield of his constitutional right to decline to answer the questions; consequently, the substance of Butterfield's compelled testimony thereafter is irrelevant. The statements the State seeks to use were obtained in violation of Butterfield's Fifth Amendment right, and the trial court could conclude they may not be used as evidence against Butterfield in the subsequent criminal prosecution for aggravated perjury. *See* Tex.Code Crim. Proc. Ann. art. 38.23 (West Supp.1998). As the State has not demonstrated that the trial court abused its discretion in granting Butterfield's motion to suppress, we overrule the State's sole point of error and affirm the order of the trial court.

/s/ Marilyn Aboussie

Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Davis *

Filed: March 12, 1998

Do Not Publish

COURT OF APPEALS
THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

No. 03–97–00085–CR

The State of Texas

v.

Tommy Wayne Butterfield

(NO. 0961962 IN THE 331ST DISTRICT COURT OF Travis COUNTY)

\* \* \* \* \*

I, DIANE O'NEAL, CLERK OF THE THIRD COURT OF APPEALS OF THE STATE OF TEXAS, do hereby certify

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

that the foregoing 6 (Six) pages contain a true and correct copy of the:

Opinion

filed in said Court on the 12th day of March, 1998, in the above numbered and styled cause.

WITNESS MY HAND and the seal of the COURT OF APPEALS for the Third District of Texas, this the 4th day of June A.D. 1998. DIANE O'NEAL, CLERK

By: /s/ Mark Adams
 Mark Adams, Deputy