

NUMBER 13-13-00520-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GEORGE BURKE,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

**On appeal from the 130th District Court
of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes
Memorandum Opinion by Justice Benavides**

By two issues, appellant George Burke challenges his conviction for sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(2) (West, Westlaw through 2013 3d C.S.). Burke asserts that: (1) he was denied effective assistance by his trial counsel and (2) the trial court erred by allowing admission of a

faxed copy of the Texas Department of Public Safety Crime Lab certification instead of the original.   We affirm.

## I.   BACKGROUND

On August 17, 2012, 15-year-old BT[1] told her parents that her uncle, Burke, had sexually assaulted her the day before at his home in Matagorda County.   She testified that while on family vacation, she visited her uncle's home to spend time with Burke's step-daughter and spent the night.   The following morning, BT's aunt and cousin left to attend a school event, leaving Burke and her at the home.   Burke told BT to enter a bedroom, followed her into the bedroom, forced her to undress, and sexually assaulted her.   She said he pulled her to the edge of the bed and touched her genital organs with his hands and mouth.   Additionally, Burke assaulted her by putting his penis in her vagina.   BT stated that, as she dressed after the assault, she was in shock, shaking and crying.   Due to her emotional state, she said she did not know what to do and did not tell anyone about the assault until two days later.

BT made an outcry about the incident when she later reunited with her parents. Her parents immediately left Matagorda County and took BT to the hospital in their hometown of Arlington, Texas.   They took their daughter to Arlington Memorial Hospital for a sexual assault examination, but were told that because of her age, she needed to be seen at Cook Children's Hospital, also in Arlington.   BT's parents also filed a police report with the Arlington Police Department that same day.   The following morning, BT was examined by Jayne Coffman, M.D., at the Cook Children's Hospital and a sexual

---

[1] Although the complainant's identity was not concealed at trial, given the nature of the case, on appeal, we will use only her initials.

assault exam was performed. Evidence was collected during that examination and was turned over to the Tarrant County Medical Examiner's Crime Lab by the Arlington Police Department.

The Arlington Police Department proceeded with an investigation into the sexual assault. On August 21, BT was seen at the Alliance for Children Child Advocacy Center and interviewed by Joy Hallum, a forensic interviewer. Once the Arlington Police Department completed its part of the investigation, they forwarded the police and medical reports to the Matagorda County Sheriff's Office.

Following the receipt of the Arlington Police Department's file, Sergeant James Orr of the Matagorda County Sheriff's Office attempted on multiple occasions to make contact with Burke, but only reached him by phone. An arrest warrant was eventually issued for Burke. Orr also executed a DNA search warrant. The DNA that was collected from Burke was sent off to the Tarrant County Medical Examiner's Crime Laboratory for comparison with the DNA collected from BT. On September 27, the DNA report from the crime lab confirmed that Burke's semen was found in BT's vagina.

BT, law enforcement officers, medical staff, and the crime lab scientists testified at trial. The defense did not call any witnesses and the appellant did not testify. The jury found Burke guilty as charged.

Burke elected that the jury determine punishment. During the punishment phase, Burke pleaded "true" to two prior felony convictions related to a 1991 burglary of a habitation charge and a 1992 burglary of a habitation charge. Under the habitual felony offender statute, *see id.* § 12.42(d) (West, Westlaw through 2013 3d C.S.), Burke faced a minimum sentence of twenty-five years confinement. The jury sentenced Burke to

3

ninety-nine years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. Appellant filed a motion for new trial which, after a hearing, was denied by the trial court. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, Burke argues that he was denied effective assistance of counsel during his trial.

### A. Standard of Review and Applicable Law

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the heavy burden of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the defendant must show by preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986)(en banc)(citing *Strickland*, 466 U.S. at 694); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet). Allegations of ineffectiveness must be "firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. We look to "the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson*, 9 S.W.3d at 813. If the appellant fails to prove one prong of the test, we need not reach the other prong. *See Strickland*, 466 U.S. at 697; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

4

In evaluating the first prong of *Strickland*, counsel's competence is presumed and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "A vague inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.*

**B.    Discussion**

Appellant raises multiple arguments to support his claim of ineffective assistance of counsel, including that his trial counsel: (1) only reviewed the State's file and conducted no other discovery; (2) did not interview or call any potential defense witnesses; (3) did not interview any of the law enforcement, medical, or scientific witnesses from the Arlington area; (4) did not go to the defendant's home or any other locations visited by appellant on the day of the assault; (5) did not view the videotaped forensic interview of BT; (6) did not request any medical records of BT; (7) did not retain a DNA or medical expert to help interpret the DNA results or ask that the DNA be retested; (8) did not explain the trial process to him; (9) made no strikes for cause during the voir dire process; and (10) stated that the defendant should be punished, during his punishment-phase closing arguments.

First, Burke asserts that his trial counsel only reviewed the State's file and conducted no other discovery. Burke's trial counsel stated during the motion for new

trial hearing that he did review the discovery within the State's file. Burke does not expand on what testimony he was wanting to be brought forth from any witnesses or additional discovery. We apply a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. Without an expansion on what discovery Burke was requesting, trial counsel's performance was not deficient. Burke does not meet the first prong of *Strickland*. *Strickland*, 466 U.S. at 694.

Next, Burke alleges his trial counsel did not interview any witnesses prior to their testimony, did not go to Burke's home or other locations where he was on the day of the alleged offense, and did not interview or call any potential defense witnesses. Trial counsel cross-examined multiple witnesses involved in the investigation, both locally and from the Arlington area. Prior to the start of trial, trial counsel viewed their reports in the State's file. Burke does not explain how on top of all of this, any additional pre-trial interviews would have changed the outcome of the proceeding.

Trial counsel articulated at the motion for new trial hearing why he did not call any witnesses:

| [State]: | Was there—what—for what reasons would you choose not to interview those people [referring to defendant's family]? |
|---|---|
| [Trial Counsel]: | To my knowledge, there was never any factual basis to go ask them about anything because the—the report—the allegation was that this sexual assault had occurred when there was nobody but the defendant and [BT], nobody else around. There was nobody that could provide an alibi. |

6

Trial counsel stated during direct examination that he did not interview or call Burke's family as witnesses (other than Burke's step-daughter, who was a witness for the State) because in his opinion, "it would not have helped." Trial counsel did not feel anyone else could have helped him develop a defensive trial strategy. Burke himself was unable to explain concrete evidence to trial counsel, such as how his DNA was found in BT's vagina.

Even though Burke claims other evidence could have been in existence, "defense counsel could have reasonably determined that the potential benefit of additional witnesses or evidence was outweighed by the risk of unfavorable counter-testimony." *Bone v. State*, 77 S.W.3d at 835. This analysis is appropriate in this case. "If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence." *Id.* Trial counsel stated during the motion for new trial hearing that he did not call Burke's other family members because he was afraid of "opening the door" to admission of possible detrimental conversations, such as recorded jail conversations between Burke and his wife that he knew were in the State's possession. This would seem to be reasonable trial strategy in trying to keep out possible detrimental evidence against his client. Therefore, Burke does not meet the first prong of *Strickland*. *See Strickland*, 466 U.S. at 668.

Burke also alleges that his trial counsel did not retain a DNA or medical expert to help interpret the DNA results nor did he ask for the DNA to be retested. Trial counsel testified that discrediting the DNA results was part of his trial strategy:

> The trial strategy ultimately became—well, first of all, it was to try to cause doubt upon the testimony of the complaining witness by trying to point out things that I hoped the jury might view as inconsistent with a 15-year-old girl

7

who had just been forcibly raped; and then secondly, to try to inject some doubt or questions in the jury's mind about this DNA report.

Trial counsel was given the opportunity to conduct extensive cross-examination on both of the analysts that conducted the DNA testing, Heather Torres and Constance Patton. In *Teixeira v. State*, 89 S.W.3d 190, 193-194 (Tex. Crim. App.—Texarkana 2002, no pet.), the defendant argued "his trial counsel was ineffective in failing to request that a sexual offense expert be appointed to assist at trial or in mitigation of punishment." The Texarkana court found that "in order for this argument to have merit, there must be some showing in the record that an expert would have testified in a manner that would have benefitted Teixeira. Without such a showing, this *Strickland* attack is….not sustainable." *Id.*

During examination by appellate counsel, trial counsel was not sure what an expert would have found:

> [Appellate Counsel]: Do you think that if you had consulted someone to assist you in this [DNA analysis], because you stated you did not have the expertise, that they might have been able to offer you an alternative explanation?
>
> [Trial Counsel]: Well, maybe; but they might have confirmed what the report said, too. So, I just don't know what might have happened.

Therefore, Burke is unable to show that expert testimony would be in his benefit. *See id.*

This case is also distinguishable from *Ex parte Briggs*, 187 S.W.3d 458, 469-470 (Tex. Crim. App. 2005). In *Briggs*, trial counsel was found ineffective for not hiring a medical expert due to economic reasons, not as a result of strategy. *Id.* The Court

found that there were other remedies that could have been undertaken to provide funding for an expert, and trial counsel had not taken the proper steps to try to receive that funding. *Id.* Here, trial counsel decided against asking for an expert to be appointed as part of his trial strategy. Without a showing that an expert would have testified favorably for Burke, this does not defeat the first prong for ineffective assistance. *See Strickland*, 466 U.S. at 668.

Next, Burke alleges that trial counsel did not view the video of BT's forensic interview. During the motion for new trial hearing, trial counsel was unable to recall if he had viewed the forensic interview of BT:

| | |
|---|---|
| [Appellate Counsel]: | Did you—did you review a video of the complaining witness [BT], a statement that might have been taken from her? |
| [Trial Counsel]: | A video? I never knew that such a video existed. |
| [Appellate Counsel]: | Did you inquire as to whether one existed? |
| [Trial Counsel]: | I looked at the State's file. If there had been one in there, I'm sure I would have looked at it. But I have no current memory of that. |

However, during trial counsel's cross-examination of the forensic interviewer, Hallum, during the trial, he was able to ask specific questions regarding BT's demeanor from the forensic video. Trial counsel had the following exchange with Hallum:

| | |
|---|---|
| [Trial Counsel]: | Yeah. And because [BT] went through your usual scheme of responses—I think she did say at first though, "I don't remember." "I don't remember." She said that two or three times. Do you remember that? |
| [Hallum]: | Yes. |

9

. . . .

[Trial Counsel]: And your entire interview with [BT] was just short of an hour, right?

[Hallum]: Yes.

Since trial counsel was unable to recall his actions relating to this particular allegation, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable or professional." *Bone*, 77 S.W. 3d at 833. "Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation." *Id.* "Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (citing *Bone*, 77 S.W.3d at 836).

Additionally, Burke states that trial counsel did not use any strikes for cause during the voir dire process. However, a review of the trial record shows that the State and defense agreed to all the strikes for cause during the voir dire process:

[State]: Your honor, the State moves to strike the following for cause; and I believe they're by agreement. Juror No. 6, 21, 24, 26, 27, 32, and 38.

[Trial Counsel]: That's correct, Judge.

Thus, Burke's assertion on appeal is incorrect because trial counsel did use strikes for cause during the voir dire portion of the trial.

Sixth, Burke alleges that trial counsel did not request BT's medical records or explain the trial process to him. The sexual assault medical report from that examination was introduced into evidence as State's Exhibit 1. There were no questions regarding medical records or regarding the explanation of the trial process at the motion for new trial hearing. Further, Burke mentions these two issues in his appellate brief without any further facts or argument as to how this negatively affected him. The burden was not met by Burke during the motion for new trial hearing and these issues have been insufficiently briefed, and no argument was presented for this court's review. *See Strickland*, 466 U.S at 668; TEX. R. APP. P. 38.1(i) (West, Westlaw through 2013 3d C.S.).

Finally, Burke alleges that trial counsel's argument calling for Burke's punishment amounts to ineffective assistance of counsel. Although Burke's trial counsel did argue for punishment, trial counsel also asked the jury for leniency in determining a term of Burke's confinement. Appellant had already been found guilty, was not eligible for probation, and was facing a twenty-five-year minimum sentence due to his two felony enhancements. Trial counsel argued the following:

> So he's going to be punished. He should be punished. But I'm asking you to consider giving him some [sic] to—to rejoin society at sometime in the future. Even with the minimum, he's going to be 60-something years old if he does serve all. That's a substantial sentence.

> So I guess I'm asking you to consider the possibility that he can turn his life around. Mix punishment with mercy.

Even though Burke argues his prior felony convictions were over twenty years old and character witnesses could have testified to his lifestyle, he pled true to the two enhancement paragraphs located in the indictment. His previous plea bargain agreement prior to this trial was a sentence of twenty-five years in the Texas Department

11

of Criminal Justice—Institutional Division. Trial counsel's argument was for leniency, not for a harsher punishment and thereby, not ineffective. *See Strickland*, 466 U.S. at 668.

Accordingly, we conclude that Burke did not meet his burden on any of his ineffective assistance claims to rebut the first prong of *Strickland*. *See Strickland*, 466 U.S. at 668. Burke does not explain why his trial counsel's alleged failures were "unreasonable under prevailing professional norms." *Kimmelman*, 477 U.S. at 384. Even though there was a motion for new trial hearing held, many of the issues raised in this direct appeal were not referred to in that hearing. Therefore, trial counsel has not been given an opportunity to respond to these allegations against him. A writ of habeas corpus would be the better method for submitting these allegations; then, trial counsel can adequately respond. *See Rylander*, 101 S.W.3d at 111; *Goodspeed*, 187 S.W.3d at 392. Burke's first issue is overruled.

### III. ADMISSION OF EVIDENCE

By his second issue, Burke argues that the trial court abused its discretion by admitting a facsimile copy of the Department of Public Safety accreditation certificate into evidence under Texas Rules of Evidence 1003 and 1005. *See* TEX. R. EVID. 1003, 1005.

#### A. Standard of Review

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). The trial court has broad discretion in determining the admissibility of evidence, and its ruling should not be set aside absent a clear abuse of that discretion. *Butterfield v. State*, 992 S.W.2d 448, 458 (Tex. Crim. App. 1999); *Allridge v. State*, 850 S.W.3d 471, 492 (Tex. Crim. App. 1991)

(en banc).    As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Prible*, 175 S.W.3d at 731.

### B.    Discussion

Appellant claims that the trial court erred by allowing a facsimile copy of the certification of the Tarrant County Medical Examiner's Crime Lab into evidence. However, appellant does not explain how allowing this document was error by the trial court.    The following exchange during trial occurred:

| [State]: | Is the Tarrant County Medical Examiner's office accredited by the Texas Department of Public Safety? |
|---|---|
| [Torres]: | Yes, sir. |
| . . . . | |
| [State]: | Miss Torres, do you have a copy of the certificate of certification by the Texas Department of Public Safety of your laboratory? |
| [Torres]: | I do not sir; but there is a certificate in the lab itself. |
| [State]: | Okay.   And can you obtain a copy of that certificate today via fax? |
| . . . . | |
| [Torres]: | I'm assuming that we could submit or provide a copy of the certification. |
| . . . . | |

Defense counsel objected to the introduction of State's Exhibit 6, a facsimile copy of the certificate from the Tarrant County Medical Examiner's Crime Lab:

13

[Trial Counsel]:     Judge, on Exhibit 6, defense would object, it's hearsay. Also, object that it's insufficiently authenticated. It's not the best evidence of what it purports to be.

. . . .

[State]:     Your Honor, I believe that if Rule 1005—the State is taking the position based on the Court's questioning about whether this is a public record—I'm not contending that it is. I'm assuming for purposes of argument that it is a copy of the document, which is an original. This witness has testified to the fact that it is a true and accurate copy of the original.

     If we proceed under Rule 1005, the requirement would be that this witness can testify that she has compared it to the original and knows it to be true. This witness, I believe, testified earlier that she has seen the certificate on the wall of the office in which she works. So I've asked if this is a true and accurate copy of that certification. So if 1005 is the rule in which the Court is proceeding, the State would take the position that this witness has testified consistently.

. . . .

     I was just going to also point out that the objection originally was made under 38.35, which indicates that a prima facia evidence of the accreditation of the laboratory can be made by a copy of the certificate. And that rule does not require the certification of the copy.

. . . .

[Trial Counsel]:     Judge, I just bring it to your attention that the statute doesn't talk about copies of the certificate being prime [sic] facia evidence. They talk about—the statute talks about the certificate. Apparently, the legislature said only the certificate is sufficient to constitute prime [sic] facia evidence.

. . . .

[Court]:     Objections as to Exhibit 6 are overruled.

14

Appellant objected to admission on the grounds of Rule of Evidence 1003 [Best Evidence Rule]. *See* Tex. R. Evid. at 1003. Rule 1003 states that "a duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances makes it unfair to admit the duplicate." *Id.* Appellant did not object to the authenticity of the original document. He instead stated that Exhibit 6 was not proper under the Best Evidence Rule without further explanation. The State responded to that objection and the trial court agreed that this certification of the crime lab would be admissible under Rule of Evidence 1005. *See id.* at 1005. Rule 1005 states:

> the proponent may use a copy to prove the content of an official record—or a document that was recorded or filed in a public office as authorized by law—if these conditions are met: the record or document is otherwise admissible; and the copy is certified as correct in accordance with Rule 902(4) or is testified to be correct by a witness who has compared it with the original. *Id.*

In this case, the certification is with the Texas Department of Public Safety. The testifying witness is an employee at that specific crime laboratory and had seen the original hanging in the facility. She testified that she had seen the original and that the copy at issue was a true and accurate depiction of the original document. *See* Tex. R. Evid. 902(4).

Appellant argues the State never produced a certified copy of the original nor had a custodian of records testify about the original. However, these are not requirements for admission of evidence. Because the State properly authenticated the facsimile copy of the original certification certificate and the trial court did not abuse its discretion in allowing its admission, Burke's second issue is overruled.

15

## IV.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
23rd day of April, 2015.